Opinion filed January 22, 2009











 
 
  
 
 







 
 
  
 
 




Opinion filed January 22,
2009

 

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-07-00034-CV

                                                    __________

 

VETERANS LAND BOARD OF THE STATE OF TEXAS ET AL,
Appellants

 

                                                             V.

 

                              BETTY
YVON LESLEY ET AL, Appellees

 



 

                                         On
Appeal from the 266th District Court

                                                           Erath
County, Texas

                                                Trial
Court Cause No. CV-28,679

 



 

                                                                   O
P I N I O N








Appellees
own non-executive mineral interests in lands underlying the Mountain Lakes
Development, a residential subdivision in Erath County, Texas.  They brought
this suit against the developer of the subdivision, the property owners= association for the
development, and the lot owners in the subdivision.  Appellees sought
declaratory judgment on a number of issues, and they also alleged various
claims for affirmative relief against appellants.  This case involves two
primary issues:  (1) who owned the executive rights and (2) did the owner or
owners of the executive rights breach a duty to the non-executives.  On these
issues, the trial court granted summary judgment in favor of appellees on their
claims that the developer owned the executive rights, that it owed appellees a
duty to lease the minerals, and that it breached its duty to lease.  In this
appeal, appellants challenge the trial court=s
order granting and denying summary judgment and order denying plea to the
jurisdiction.  We reverse the judgment of the trial court.

                                                                     The
Parties

Appellants
are (1) Bluegreen Southwest One, L.P. (Bluegreen), the developer of the
Mountain Lakes Development; (2) approximately 460 lot owners in the Mountain
Lakes Development (Landowner Appellants); and (3) the Veterans Land Board of
the State of Texas (VLB).  The VLB purchased lots in the development and then
sold them to veterans as part of a program that was designed to assist veterans
in obtaining property with low interest loans.  Appellees sued the VLB as a lot
owner defendant.

Appellees
are (1) Betty Yvon Lesley and her husband, Kenneth Lesley; (2) Kenneth Lesley
and Perry Elliott, Independent Executors of the Estate of Bobby John Foster,
Deceased;[1]
(3) Richard  H. Coffey, Sr.; (4) Singin=
Hills Minerals, Ltd.; and (5) JPMorgan Chase Bank, N.A., as trustee of eighteen
trusts.  Some of the claims in this case are common to all appellees.  In
addition to these common claims, the Lesley Appellees (groups (1) and (2)
above) brought claims for reformation of deeds and for breach of contract.  We
will refer to Aappellees@ when addressing the common
claims.  We will refer to the ALesley
Appellees@ when
addressing claims that are unique to them. 

                                                                      Introduction

The
Mountain Lakes Development contains about 4,100 acres of land.  The development
is located on land that was, at one time, owned by Wyatt C. Hedrick and his
wife, Mildred Sterling Hedrick.  The Hedricks owned the surface estate and the
mineral estate in the subject property.  On November 6, 1952, the Hedricks
executed a deed to H.S. Foster.  Under the deed, A[the
Hedricks] granted, sold and conveyed to [H.S. Foster] a full interest in the
surface estate and an undivided one-half (2)
interest in the oil, gas and other minerals, except that [H.S. Foster] shall
have full, complete and sole right to execute oil, gas and mineral leases covering
all the oil, gas and other minerals in the following described land.@








H.S.
Foster had two children, Betty Yvon Lesley and Bobby John Foster.  In 1966,
Betty Yvon Lesley and her husband, Kenneth Lesley, acquired from H.S. Foster
the surface estate and one-half of the mineral estate in 174.35 acres of the
subject property.  When H.S. Foster died, Betty Yvon Lesley and Bobby John
Foster inherited the entire surface estate and one-half mineral interest in
3,923.58 acres of the subject property.

In
1998, Bobby John Foster, Betty Yvon Lesley, and Kenneth Lesley sold the surface
estate of the subject property to Bluff Dale Development Corporation for about
$2,000,000.  Bluff Dale intended to develop the property as a residential
subdivision or to sell it to another residential developer.  On February 17,
1998, Bobby John Foster and Betty Yvon Lesley, joined by her husband Kenneth
Lesley, executed a deed to Bluff Dale covering 3,923.58 acres of the subject property. 
On September 30, 1998, Betty Yvon Lesley and Kenneth Lesley executed a deed to
Bluff Dale covering an additional 174.35 acres of the subject property.  Both
deeds provided:

Grantors
will be reserving unto themselves, their heirs, and assigns, one-fourth (1/4)
of the oil, gas, sulphur and other minerals to which Grantors are now entitled
to in all of the lands covered by this conveyance.  It is understood and
agreed, however, that Grantee, his heirs, successors and assigns, shall have
full rights to execute all future oil, gas, sulphur and other mineral leases
for such bonuses, such delay rentals and for such terms as Buyers may think
proper, but Grantors shall not be required to execute any such leases, but
shall be entitled to receive one-fourth (1/4) of all bonuses and delay rentals,
whether the same be paid in cash, by overriding royalties, production payments
or in any other manner.

 

By
deeds dated September 25, 1998, and December 30, 1998, Bluff Dale conveyed its
interests in the subject property to Properties of the Southwest, L.P., subject
to A[a]ny prior
reservations or conveyance[s] of oil, gas and other minerals, restrictions,
covenants, conditions, rights-of-way and easements of record.@  On March 15, 1999,
Properties of the Southwest changed its name to Bluegreen.

Bluegreen
developed the property as the Mountain Lakes Development in a series of five
sections.  In connection with developing each section, Bluegreen filed and
recorded declarations of covenants, conditions, and restrictions.  The
declarations contained the following use restriction, among others:  








Section 3.12  Mineral
Development.  No commercial oil drilling, oil development operations, oil
refining, quarrying or mining operation of any kind shall be permitted.  No
derrick or other structures designed for the use of boring for oil or natural
gas shall be erected, maintained or permitted upon any Tract.

 

Section 9.02 of
the declarations provided that A[t]his
Declaration may be amended or changed, in whole or in part, at any time by the
written agreement or signed ballot of two-thirds (2/3rds) of the Owners
(including the Developer) entitled to vote.@

Bluegreen
sold home sites to about 1,700 purchasers.  Although Bluegreen did not use
identical deeds in connection with all the sales, one type of deed that
Bluegreen commonly used provided as follows:

Reservation from conveyance:
None.

 

Exceptions to Conveyance and
Warranty:

 

1. Any and all restrictions,
covenants, and easements, if any, relating to the hereinabove described
property, but only to the extent they are still in effect, shown of record in Erath
County, Texas, and to all zoning laws, regulations or ordinances of municipal
and other governmental authorities, if any, but only to the extent they are
still in effect, relating to the hereinabove described property.  

 

2.  Undivided one-half of all
oil, gas and other minerals of every character in and under the herein
described property reserved by Wyatt Hedrick, et ux, in instrument recorded in
Volume 339, Page 172, Deed Records, Erath County, Texas.

 

 3.  Undivided one-fourth of all
oil, gas and other minerals of every character in and under the herein
described property reserved by Bobby John Foster, et al in  instrument recorded
in Volume 948, Page 639, Deed Records, Erath County, Texas.

 

                                             Proceedings in Trial
Court








On
October 12, 2005, appellees sued Bluff Dale, Bluegreen, the Property Owners= Association of Mountain
Lakes Ranch (POA), and about 1,700 individual lot owners.  In their petition,
appellees alleged, among other things, (1) that they owned undivided mineral
interests in the subject property; (2) that, as a result of the transactions
described above, Bluegreen had acquired the executive rights and had later
transferred Aall the
executive rights to the lot owners of all minerals underlying each of said lots@; (3) that the defendants
as their mineral co-tenants and as owners of the executive rights owed a duty
of utmost good faith to them as non-executive mineral interest owners; and (4)
that A[s]uch duty
[was] fiduciary in nature and include[d] the duty to lease all of the minerals
for exploration and development of oil and gas.@ 
Appellees alleged that all defendants had breached this fiduciary duty and,
specifically, that Bluegreen and the POA had breached this duty by creating the
restriction that prohibited mineral development.  Appellees also alleged claims
for breach of contract and sought a declaratory judgment on a number of issues,
including declarations as to their rights as non-executive mineral interest
owners and as to the defendants=
duties as owners of the surface, the executive rights, and the remaining
minerals.   

In
an amended pleading filed in October 2006, appellees changed their position as
to who owned the executive rights.  They no longer alleged that Bluegreen had
transferred the executive rights to the lot owners.  Instead, they alleged
that, because Bluegreen had listed the restrictive covenants as an exception Ato the conveyance@ in its deeds to the lot
owners and because the restrictions prohibited mineral development, Bluegreen
had not effectively transferred the executive rights to the lot owners.  In
their live pleadings, appellees sought declarations, among others, concerning
(1) ownership of mineral interests, (2) ownership of the executive rights, (3)
breach of duty owed by the owner of the executive rights, and (4) applicability
of the covenants and subdivision plats to the mineral estate.  Appellees
alleged breach of fiduciary duty claims and breach of contract claims against
the defendants.  Appellees also alleged tortious interference claims and
intentional invasion or interference with property rights claims against
Bluegreen.  The Lesley Appellees alleged an additional breach of contract
claim.  They also sought to reform the mineral reservation clauses in their
deeds to Bluff Dale on the ground of mutual mistake.  








Many
of the parties filed traditional and no-evidence motions for summary judgment. 
The appellate record contains twenty-six motions for summary judgment, including
supplemental motions, a clerk=s
record, eleven supplemental clerk=s
records, and eight reporter=s
records.  The VLB filed a plea to the jurisdiction based on sovereign
immunity.  On November 7 and 8, 2006, and on January 16 and 17, 2007, the trial
court heard the motions for summary judgment and the plea to the jurisdiction. 
On January 17, 2007, the trial court entered its order granting and denying
summary judgment and order denying plea to the jurisdiction.  In the order, the
trial court granted (1) appellees=
November 3, 2006 request for summary judgment and December 26, 2006
supplemental motion for partial summary judgment asserting that Bluegreen owned
the executive rights; (2) appellees=
July 18, 2006 motion for partial summary judgment, October 10, 2006
supplemental motion for partial summary judgment, and December 26, 2006 second
supplemental motion for summary judgment asserting that the restrictive
covenants were not enforceable;[2]
(3) appellees=
December 26, 2006 motion for partial summary judgment against Bluegreen
asserting that it breached its duty to lease and breached its contract; and (4)
the Lesley Appellees=
December 20, 2006 motion for partial summary judgment on the deed
reformation claims asserted in their second supplemental original petition and
on the POA=s and
Bluegreen=s
counterclaims for declaratory judgment relating to the deed reformation claims.








In
the order, the trial court denied Bluegreen=s
October 23, 2006 traditional motion for summary judgment on appellees= tortious interference
claims and no-evidence motion for summary judgment on appellees= breach of contract, breach
of fiduciary duty, and tortious interference claims.  The trial court granted
the POA=s July 26,
2006 no-evidence motion for summary judgment and October  24, 2006 motion
for partial summary judgment on appellees=
breach of contract and breach of fiduciary duty claims to the extent that the
trial court declared that the POA was not liable to appellees for breach of any
duty associated with ownership of the executive rights because the POA did not
own, and had not owned, the executive rights.  Otherwise, the trial court
denied these motions.  The trial court also denied the POA=s December 21, 2006
supplemental traditional and no-evidence motions for summary judgment.  The
trial court granted the landowner defendants=
October  20, 2006 traditional and no-evidence motions for summary judgment
on appellees= damages
claims to the extent that the trial court declared that the landowner
defendants were not liable to appellees for breach of any duty associated with
ownership of the executive rights because the landowner defendants did not own,
and had not owned, the executive rights.  Otherwise, the trial court denied the
landowner defendants=
motions.  The trial court also denied the SWM clients= (some of the lot owner defendants) December
26, 2006 motion for summary judgment, the landowner defendants= December 26, 2006 motion
for summary judgment, and Bluegreen=s
December 28, 2006 motion for summary on the Lesley Appellees= deed reformation claims. 
The trial court granted other lot owner defendants= motions for summary judgment to the extent
that the trial court declared that they were not liable to appellees for breach
of any duty associated with ownership of the executive rights because the lot
owner defendants did not own, and had not owned, the executive rights. 
Otherwise, the trial court denied the other lot owner defendants= motions for summary
judgment.  The trial court denied the VLB=s
plea to the jurisdiction.

The
trial court also ordered that any motions that were not expressly granted in
the order were denied and that all defendants were permanently enjoined from
attempting to enforce the declarations of covenants.  In the order, the trial
court stated that the order did not dispose of the following claims:  (1) any
remaining claims by appellees for damages against Bluegreen; (2) any remaining
claims by the POA and any lot owner defendants against Bluegreen; and (3) any
counterclaims against plaintiffs.  The trial court entered an order severing
the claims disposed of in its order granting and denying summary judgment and
order denying plea to the jurisdiction from the remainder of the claims in the
suit.  This appeal involves the claims that were disposed of in the trial court=s order granting and
denying summary judgment and order denying plea to the jurisdiction. 

                                              The
Trial Court=s
Declaratory Judgment

Ownership
of Leasing Rights.

The
trial court determined that Bluegreen owned the executive rights.  The trial
court made the following declaration in Section IV:

The
Court DECLARES that the Bluff Dale to Bluegreen Deeds conveyed to Bluegreen the
Leasing Rights.  Subsequent to its acceptance of the Leasing Rights under the
Bluff Dale to Bluegreen Deeds, Bluegreen did not effectively convey, or assign,
all, or any portion of, the Leasing Rights to any Lot Owner Defendant, to the
POA, or to any other third party.  Therefore, Bluegreen is, and remains, the
owner of the Leasing Rights it acquired under the Bluff Dale to Bluegreen
Deeds.  Accordingly, Bluegreen is the sole and exclusive owner of the Leasing
Rights. 

 

Breach of Executive Duty Owed by Owner of Leasing
Rights.

The
trial court determined that Bluegreen, as the owner of the executive rights,
breached the duty it owed to appellees, as non-executive mineral owners.  The
trial court made the following declarations in Section V:  

The
Court DECLARES that the Owner of the Leasing Rights owes to the non-executive mineral
owners the same degree of diligence and discretion in exercising the rights and
powers granted under Leasing Rights as would be expected of the average
landowner who because of self-interest is normally willing to take affirmative
steps to seek or to cooperate with prospective lessees (hereinafter the ADuty to Lease@).

 








The Court
DECLARES that because neither the Lot Owner Defendants nor the POA own, or have
owned, the Leasing Rights, no Lot Owner Defendant or the POA has breached the
Duty to Lease owed to the Plaintiffs.

 

The Court
DECLARES that Bluegreen, as owner of the Leasing Rights, breached the Duty to
Lease by: entering into a Deed of Trust burdening the Leasing Rights; creating
and recording the Declarations of Covenants and the Plats; failing to provide
notice of the filing of the Declarations of Covenants as is required under the
Lesley/Foster to Bluff Dale Deed and the Lesley to Bluff Dale Deed; and failing
to lease the Plaintiffs=
minerals pertaining to the Subject Land when there was opportunity to do so.

 

The Court
DECLARES that Bluegreen breached the contractual requirement of the
Lesley/Foster to Bluff Dale Deed and the Lesley to Bluff Dale Deed by failing
to give the requisite notice of the filing of the Declarations of
Covenants.      

 

Applicability of the Declarations of Covenants and
Plats Upon the Mineral Estate.

The trial court determined that the declarations of
covenants and plats were unenforceable.  The trial court made the following
declarations in Section VI:

The Court
DECLARES that the Declarations of Covenants and Plats expressly purport to
prohibit and restrict the exploration for, development, production and
marketing of oil, gas and other minerals which may be located in, on, or under
the Subject Land.

 

The Court
DECLARES that neither the Declarations of Covenants, nor the Plats, are
enforceable, and cannot be used, to prohibit or restrict in any way, the
exploration for, development of, production of, and/or marketing of oil, gas
and/or other minerals which may be located in, on, or under the Subject Land.

 

The Court
DECLARES that neither the Declarations of Covenants, nor the Plats, are
enforceable, and cannot be used, to prohibit or restrict in any way, the
execution of a lease or leases covering the oil, gas, or other minerals which
may be located in, on, or under the Subject Land.

 

The Court
DECLARES that neither the Declarations of Covenants, nor the Plats, are
enforceable, and cannot be used, to prohibit or restrict in any way, the
Plaintiffs= rights as
mineral co-tenants to self-exploration or self-development of Plaintiffs= mineral interests in the
Subject Land.

 

The Court
DECLARES that Plaintiffs=
minerals in, on, or under the Subject Land are not bound, burdened, or
encumbered by any covenants entered post-severance of the Plaintiffs= minerals from the surface
estate.








The Court
DECLARES that the Plaintiffs=
minerals in, on, or under the Subject Land were severed from the surface estate
on November 5, 1952 (pursuant to the Hedrick to Foster Deed), on February 17,
1998 (pursuant to the Lesley/Foster to Bluff Dale Deed), and September 30, 1998
(pursuant to the Lesley to Bluff Dale Deed).

  

The Court DECLARES
that the remaining one-fourth mineral interest not owned by the Plaintiffs
pertaining to the Subject Land was severed from the surface estate because of
the partitioning of the surface estate by virtue of the recording of the
Declarations of Covenants and the recording of the Plats.

 

Ownership
of Mineral Interests. 

The
trial court=s
declarations related to the Lesley Appellees=
claims for reformation of the  February 17, 1998 deed from Bobby John Foster
and Betty Yvon Lesley to Bluff Dale and the September 30, 1998 deed from Betty
Yvon Lesley and Kenneth Lesley to Bluff Dale.  In Section II,  the trial
court declared, in relevant part, as follows:  (1) that the parties to the
deeds intended for the Lesley Appellees to reserve an undivided one-fourth
mineral interest, without leasing rights, in the subject lands; (2) that
scrivener=s errors in
the deeds by the Lesley Appellees=s
attorney resulted in a mutual mistake regarding the mineral interest to be
reserved; (3) that, as a result of the scrivener=s
errors, the deeds contained Aan
ambiguity that could be interpreted as reserving one-eighth of the oil, gas and
other minerals@; (4)
that the deeds should be, and were, reformed to reserve a one-fourth mineral
interest; (5) that reformation of the deeds would not affect the reasonable
expectations of subsequent purchasers of the property who took with notice of
the ambiguities in the deeds and who did not bargain to receive more than a
one-fourth mineral interest; (6) that reformation of the deeds resulted in such
subsequent purchasers receiving the mineral interest that they bargained to
receive when they purchased their lots; and (7) that each lot owner defendant
was conveyed a one-fourth mineral interest, without executive rights, in their respective
lots.

                                                     Issues on Appeal








The
Landowner Appellants present six issues for review.  In their first five
issues, they contend that the trial court erred in granting summary judgment to
appellees and in denying summary judgment to them for the following reasons:
(1) that the owner of the executive rights does not have an affirmative duty to
lease the minerals; (2) that appellees failed to present evidence showing that
they breached the alleged duty to lease; (3) that appellees do not have a right
to self-develop the minerals; (4) that Bluegreen did not retain the executive
rights and that the trial court=s
conclusion that Bluegreen retained the executive rights was irreconcilable and
void because it was based on a finding that the restrictive covenants were both
valid and invalid; and (5) that a deed may not be reformed under the doctrine
of mutual mistake when subsequent purchasers have acquired the property without
knowledge of the mutual mistake.  In their sixth issue, the Landowner
Appellants contend that, if this court determines that a duty to lease exists
or that appellees have a right to self-develop the minerals, we should extend
the accommodation doctrine to protect against condemnation of the surface
estate.

Bluegreen
presents six issues for review.  In its first issue, Bluegreen contends that
the trial court erred in rendering summary judgment declaring that the owner of
the executive rights owes a fiduciary duty to lease.  In its second issue,
Bluegreen contends that the trial court erred in rendering summary judgment to
appellees that Bluegreen breached a duty to lease appellees= minerals.  In its third
and fourth issues, Bluegreen contends that the trial court erred in rendering
summary judgment to the Lesley Appellees (1) on their claim that Bluegreen
breached the contractual notice requirements in their deeds to Bluff Dale and
(2) on their reformation claims.  In its fifth issue, Bluegreen contends that
the trial court erred in failing to render summary judgment to it with respect
to the issues raised in Issues Nos. 1 through 4 above.  In its sixth issue,
Bluegreen contends that, if it owns the executive rights, the trial court erred
in denying its motion for summary judgment on appellees= tortious interference claims.    

The
VLB presents one issue for review.  In its issue, the VLB contends that the
trial court erred in denying its plea to the jurisdiction based on sovereign
immunity.

                                             Summary
Judgment Standards of Review








We
review the trial court=s
summary judgment de novo.  Valence Operating Co. v. Dorsett, 164 S.W.3d
656, 661 (Tex. 2005); Provident Life & Accident Ins. Co. v. Knott,
128 S.W.3d 211, 215 (Tex. 2003).  The parties filed traditional and no-evidence
motions for summary judgment.  A trial court must grant a traditional motion
for summary judgment if the moving party establishes that no genuine issue of
material fact exists and that the movant is entitled to judgment as a matter of
law.  Tex. R. Civ. P. 166a(c); Lear Siegler, Inc.
v. Perez, 819 S.W.2d 470, 471 (Tex. 1991).  In order for a defendant to be
entitled to summary judgment, it must either disprove an element of each cause
of action or establish an affirmative defense as a matter of law.  Am.
Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997); Sci. Spectrum,
Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Once the movant
establishes a right to summary judgment, the nonmovant must come forward with
evidence or law that precludes summary judgment.  City of Houston v. Clear
Creek Basin Auth., 589 S.W.2d 671, 678-79 (Tex. 1979).  When reviewing a
traditional summary judgment, the appellate court considers all the evidence
and takes as true evidence favorable to the nonmovant.  Am. Tobacco Co.,
951 S.W.2d at 425; Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49
(Tex. 1985).  The appellate court Amust
consider whether reasonable and fair-minded jurors could differ in their
conclusions in light of all of the evidence presented@ and may not ignore Aundisputed evidence in the record that cannot
be disregarded.@  Goodyear
Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755, 757 (Tex. 2007). 

When
a no-evidence motion for summary judgment is filed, the burden shifts to the
nonmoving party to present evidence raising an issue of material fact as to the
elements specified in the motion.  Mack Trucks, Inc. v. Tamez, 206
S.W.3d 572, 582 (Tex. 2006).  A trial court must grant a proper no-evidence
motion for summary judgment unless the nonmovant produces more than a scintilla
of probative evidence to raise a genuine issue of material fact on the
challenged elements of the claim.  Tex.
R. Civ. P. 166a(i); Ford Motor Co. v. Ridgway, 135 S.W.3d 598,
600 (Tex. 2004); Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d 502, 506
(Tex. 2002).  We review a no-evidence summary judgment under the same standard
as a directed verdict.  King Ranch, Inc. v. Chapman, 118 S.W.3d 742,
750-51 (Tex. 2003).  We review the evidence in the light most favorable to the
party against whom the summary judgment was rendered, crediting evidence
favorable to that party if reasonable jurors could and disregarding contrary
evidence unless reasonable jurors could not.  Tamez, 206 S.W.3d at 582; City
of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

Competing
motions for summary judgment were filed on some of the issues.  When competing
motions are filed and one is granted and the other is denied, the reviewing
court must review the summary judgment evidence presented by both sides and
determine all questions presented.  Comm=rs Court of Titus County v. Agan, 940
S.W.2d 77, 81 (Tex. 1997).  The reviewing court should render such judgment as
the trial court should have rendered.  Id.  

                                                  Ownership
of the Executive Rights








As
part of Bluegreen=s
second issue, it asserts that the trial court erred in concluding that it was
the sole owner of the executive rights.  As part of the Landowner Appellants= fourth issue, they assert
that the trial court erred in concluding that Bluegreen reserved the executive
rights in its deeds to the lot owners.  A mineral estate consists of five
attributes: (1) the right to develop (the right of ingress and egress); (2) the
right to lease (the executive right); (3) the right to receive bonus payments;
(4) the right to receive delay rentals; and (5) the right to receive royalty
payments.  French  v. Chevron U.S.A., Inc., 896 S.W.2d 795, 797
(Tex. 1995); Altman v. Blake, 712 S.W.2d 117, 118 (Tex. 1986); Reagan
v. Marathon Oil Co., 50 S.W.3d 70, 82 (Tex. App.CWaco 2001, no pet.);  Bank One, Tex., Nat=l Ass=n v. Alexander, 910
S.W.2d 530, 532 (Tex. App.CAustin
1995, writ denied).  Each attribute is an independent property right, may be
severed into a separate interest, and may be separately conveyed or reserved by
the owner.  French v. Chevron U.S.A., Inc., 871 S.W.2d 276, 277-78 (Tex.
App.CEl Paso 1994), aff=d, 896 S.W.2d 795 (Tex.
1995); Extraction Res., Inc. v. Freeman, 555 S.W.2d 156, 158-59 (Tex.
Civ. App.CEl Paso
1977, writ ref=d
n.r.e.).  When an owner conveys a mineral estate, all attributes are impliedly
transferred as well unless they are specifically reserved to the grantor.  French,
871 S.W.2d at 278; Prairie Producing Co. v. Schlachter, 786 S.W.2d 409,
412 (Tex. App.CTexarkana
1990, writ denied).  Thus, when a mineral interest is conveyed, the executive
right incident to that interest passes to the grantee unless specifically
reserved.  Day & Co. v. Texland Petroleum, Inc., 786 S.W.2d 667, 669
n.1 (Tex. 1990);  Schlittler v. Smith, 101 S.W.2d 543, 544 (Tex. 1937).








In
this case, the Hedricks conveyed the executive rights to H.S. Foster in the
1952 deed.  That deed specifically provided that A[H.S.
Foster] shall have full, complete and sole right to execute oil, gas and
mineral leases covering all the oil, gas and other minerals in the following
described land.@  In
1966, Betty Yvon Lesley and her husband, Kenneth Lesley, acquired from H.S.
Foster the surface estate and one-half of the mineral estate in 174.35 acres of
the subject property.  When H.S. Foster died, Betty Yvon Lesley and Bobby John
Foster inherited the surface estate and one-half mineral interest in 3,923.58
acres of the subject property.  In the 1998 deeds from (1) Betty Yvon Lesley
and Bobby John Foster to Bluff Dale and (2) Betty Yvon Lesley and Kenneth
Lesley to Bluff Dale, the Lesleys and Foster conveyed the executive rights to
Bluff Dale.  Specifically, the deeds provided that  A[Bluff Dale] shall have full rights to execute
all future oil, gas, sulphur, and other mineral leases.@  The parties do not dispute that the Lesleys
and Foster conveyed the executive rights to Bluff Dale, that Bluff Dale
conveyed the executive rights to Properties of the Southwest, that Properties
of the Southwest later changed its name to Bluegreen, and that, therefore,
Bluegreen became the owner of the executive rights.

Bluegreen=s deeds to the lot owners typically
provided that there were no reservations from conveyance.  The deeds also
typically provided that Aall
restrictions, covenants, and easements@
were exceptions to the conveyance and warranty.  One such restriction was the
prohibition against mineral development set forth in Section 3.12 of the
declarations of covenants, uses, and restrictions.  Section 3.12 provided that A[n]o commercial oil
drilling, oil development operations, oil refining, quarrying or mining
operation of any kind shall be permitted.@ 
Appellees state in one of their appellate briefs that, A[w]hile none of the Bluegreen deeds make any
specific mention of the right of ingress and egress for development of the
minerals or the right to execute a lease, by stripping the grantee of any right
to drill, quarry, or mine, by definition, the grantee is without the ability to
convey those rights to a subsequent lessee.@ 
Appellees assert that, because Section 3.12 prohibited the lot owners from
leasing the minerals, the deeds expressed an intent on the part of Bluegreen to
reserve the executive rights.  Therefore, appellees contend that Bluegreen
retained the executive rights.  The trial court declared that Bluegreen had not
effectively conveyed the executive rights to the lot owners, to the POA, or to
any other party.

As
acknowledged by appellees, Bluegreen=s
deeds to the lot owners did not specifically mention the right to execute a
lease.  Bluegreen did not specifically reserve the executive rights in its
deeds to the lot owners.  In essence, appellees assert that Bluegreen impliedly
reserved the executive rights by including the restriction against mineral
development in the deeds.  However, a grantor may not reserve the executive
rights by implication.  Because Bluegreen did not specifically reserve the
executive rights in its deeds to the lot owners, the executive rights passed to
the lot owners.  Day & Co., 786 S.W.2d at 669 n.1.[3]









The
trial court erred in granting summary judgment declaring that Bluegreen did not
effectively convey the executive rights to the lot owners or any of its other
grantees.[4]  We sustain
the  Landowner Appellants=
fourth issue and Bluegreen=s
second issue to the extent the Landowner Appellants and Bluegreen complain that
the trial court erred in concluding that Bluegreen reserved the executive
rights.[5]  We reverse Section
IV of the trial court=s
order.  Because neither the Landowner Appellants nor Bluegreen moved for
summary judgment that Bluegreen conveyed the executive rights to the lot
owners, we do not render judgment declaring that Bluegreen conveyed the
executive rights to the lot owners.  Instead, we remand the ownership of the
executive rights issue to the trial court for further proceedings consistent
with this opinion.

                        Duty
of Executive Rights Owner to Non-Executive Mineral Owners

In
its declarations, the trial court defined the duty owed by the executive to the
non-executive mineral owners as follows:

[T]he Owner of
the Leasing Rights owes to the non-executive mineral owners the same degree of
diligence and discretion in exercising the rights and powers granted under
Leasing Rights as would be expected of the average landowner who because of
self-interest is normally willing to take affirmative steps to seek or to
cooperate with prospective lessees (hereinafter the ADuty to Lease@).[6]


 

 The trial court=s declaration is identical
in material respects to a jury instruction that was given in Manges v.
Guerra, 673 S.W.2d 180, 183 (Tex. 1984).  In Manges, neither party
objected to the instruction, and the Texas Supreme Court did not approve the
instruction as properly defining the duty owed by the owner of the executive
right.  673 S.W.2d at 183.








In
Manges, the executive engaged in acts of self-dealing, including leasing
the minerals to himself on terms that were unfair to the non-executive mineral
owners.  Id. at 184.  The executive also executed a deed of trust
covering Aall of the
oil, gas and other mineral interests . . . including . . . executive rights and
powers.@  Id.
at 182.  The Manges court recognized that an executive owes the
non-executive mineral owners the duty of utmost good faith and that the duty is
fiduciary in nature.  Id. at 183.  The fiduciary duty arises from the
relationship of the parties and not from the terms of a contract.  Id. 
The court explained that A[the]
duty requires the holder of the executive right . . . to acquire for the
non-executive every benefit that he exacts for himself.@  Id.  The court held that the
executive had breached his fiduciary duty in making the lease to himself, in
agreeing to accept a nominal bonus as a term of the lease, and Ain dealing with the entire
mineral interest so that he received benefits that the non-executives did not
receive.@  Id.
at 184.   

In
In re Bass, 113 S.W.3d 735 (Tex. 2003) (orig. proceeding), the supreme
court explained its holding in, and distinguished, Manges:         

Manges
involved a dispute between mineral estate co-tenants.  Manges purchased
one-half of the mineral estate and executive leasing rights from the Guerra
family with the Guerras retaining the other 50% ownership interest in the
mineral estate.  The Guerras sued Manges for self-dealing in leasing a portion
of the estate to himself at unfair terms.  We stated that A[a] fiduciary duty arises
from the relationship of the parties . . . [t]hat duty requires the holder of
the executive right, Manges in this case, to acquire for the non-executive
every benefit that he exacts for himself.@ 
Accordingly, we held that Manges breached his fiduciary duty to the Guerras by
making a lease to himself under numerous unfair terms.

 

.
. . .

 

What
differentiates this case from Manges, however, is that no evidence of
self-dealing exists here.  Bass has not leased his land to himself or anyone
else.  Bass has yet to exercise his rights as the executive.  Because Bass has
not acquired any benefits for himself, through executing a lease, no duty has
been breached.  Thus, the present facts are distinguishable from Manges.  


          

113 S.W.3d at 744-45 (citation omitted).








The
court=s analysis in Bass
establishes that no breach of fiduciary duty can occur until the executive
exercises the executive rights.  Under Manges and Bass, a breach
of fiduciary duty occurs if (1) the executive exercises the executive rights,
(2) the executive acquires benefits from the minerals for himself by exercising
the executive rights, and (3) the executive fails to acquire every benefit for
the non-executive mineral owners that he acquired for himself.  Bass,
113 S.W.3d at 744-45.  The owner of the executive rights does not have an
affirmative duty to lease the minerals.[7]  See
Hlavinka v.  Hancock, 116 S.W.3d 412, 420 (Tex. App.CCorpus Christi 2003, pet. denied)
(A[A]ppellees
misconstrue Manges in seeking to impose a fiduciary duty to lease upon
the executive interest owner.@). 
The trial court erred in defining the duty owed by the executive to the
non-executive mineral owners.  We sustain Bluegreen=s first issue.      

The
trial court also declared that Bluegreen, as the executive rights owner,
breached the ADuty to
Lease@ in four
respects:  (1) by entering into a deed of trust burdening the executive rights;
(2) by creating and recording the declarations of covenants and the plats for
the subdivision; (3) by failing to provide notice of the filing of the
declarations of covenants as is required under the Lesley Appellees= deeds to Bluff Dale; and
(4) by failing to lease appellees=
minerals when there was opportunity to do so.  In Manges, the executive=s deed of trust covered all
mineral interests, including the executive right.  Manges, 673 S.W.2d at
182.  Appellees contend that Bluegreen executed two similar deeds of trust.[8] 
However, the deeds of trust that Bluegreen executed did not purport to cover
any mineral interests.  Even if Bluegreen=s
deeds of trust had covered the executive rights, we would find, under the
reasoning in Bass, that Bluegreen did not exercise the executive rights
to obtain benefits from the minerals by executing the deeds of trust.  In
contrast, this court in Comanche Land &  Cattle Co. v. Adams,
688 S.W.2d 914, 915-16 (Tex. App.CEastland
1985, no writ), cited by appellees, found that the holder of the executive
rights had obtained a benefit from the minerals that the non-executive royalty
owners had not.  Bluegreen did not exercise the executive rights by creating
and recording the declarations of covenants and the plats for the subdivision. 
Rather, the declarations, which included the restriction against mineral
development, showed that Bluegreen would not be exercising the executive
rights.  Similarly, Bluegreen did not exercise the executive rights by failing
to provide notice of the filing of the declarations of covenants to the Lesley
Appellees.  We have held that the owner of the executive rights does not have a
duty to lease the minerals.  Therefore, Bluegreen did not breach a duty by
failing to lease appellees=
minerals.








The
Landowner Appellants moved for a no-evidence summary judgment on the ground
that they did not breach the alleged fiduciary duty to lease appellees= minerals.  There is no
evidence in the record that the Landowner Appellants exercised the executive
rights.[9]  Because the
record lacks such evidence, the trial court erred in denying summary judgment
to the Landowner Appellants on appellees=
breach of fiduciary duty claims.        

We
note that the facts in this case are nothing like the facts in Manges. 
This case involves an arms-length transaction between the Lesley Appellees and Bluff
Dale.  Bluff Dale wanted to obtain property for the purpose of developing a
residential subdivision or selling it to another residential developer.  Bluff
Dale bought about 4,100 acres of land from the Lesley Appellees for that
purpose; Bluff Dale did not buy the land for the purpose of mineral
development.  The Lesley Appellees certainly knew that a residential developer
would not want drilling or other similar activities to take place on the
surface area in the subdivision. With that knowledge, the Lesley Appellees sold
the property to Bluff Dale for about $2,000,000.  The Lesley Appellees could
have negotiated to retain the executive rights.  They could have refused to
sell the property if Bluff Dale did not agree to let them retain the executive rights. 
Instead, the Lesley Appellees willingly conveyed the executive rights to Bluff
Dale.  Bluegreen, which later obtained the executive rights, developed the
property as a residential subdivision.  Bluegreen created the declarations of
covenants, conditions, and restrictions for the purpose of maintaining the
integrity of the subdivision.  Based on the facts in this case, even if the
declarations or the agreement to comply with them could be construed as an
exercise of the executive rights, Bluegreen, the POA, and the lot owners did
not breach a fiduciary duty to appellees.[10]








Because
Bluegreen, as the executive rights owner, did not breach a fiduciary duty to
appellees, the trial court erred in granting summary judgment to appellees on
their breach of fiduciary claims against Bluegreen, and we reverse Section V of
the trial court=s order. 
For the same reason, the trial court erred in denying summary judgment to
Bluegreen on appellees=
breach of fiduciary duty claims.  We sustain Bluegreen=s second issue, and we also sustain its fifth
issue to the extent it asserts that the trial court erred in denying summary
judgment to it on appellees=
breach of fiduciary duty claims.  The trial court also erred in denying summary
judgment to the Landowner Appellants on appellees=
breach of fiduciary duty claims.  Therefore, we sustain the Landowner
Appellants= second
issue.  We render judgment that appellees take nothing on their breach of
fiduciary duty claims against Bluegreen and the Landowner Appellants.

                                                                 Right
to Develop

Appellees
contend that, as non-executive mineral owners, they have a common-law right to
self-develop their minerals.  The trial court declared that the declarations of
covenants were unenforceable and could not be used to prohibit Athe [appellees=] rights as mineral
co-tenants to self-exploration or self-development of [their] mineral interests
in the Subject Land.@ 
As set forth above, the right to develop is one of the five attributes of the
mineral estate.  French, 896 S.W.2d at 797.  A[T]he right to develop is a correlative right
and passes with the executive rights.@ 
Id. at 797 n.1; see also Day & Co., 786 S.W.2d at 669 n.1; Reagan
v. Marathon Oil Co., 50 S.W.3d 70, 82 n.11 (Tex. App.CWaco 2001, no pet.); Alexander,
910 S.W.2d at 532-33.  When the Lesley Appellees conveyed the executive rights
to Bluff Dale, the right to develop passed with the executive rights to Bluff
Dale.  Therefore, appellees did not retain a right to develop their minerals.[11] 
The trial court erred in declaring that appellees had the right to self-develop
the land.[12]  We sustain
the Landowner Appellants=
third issue.  Because appellees do not have the right to self-develop their
minerals, we must reverse Section VI of the trial court=s order.[13]

                           Lesley
Appellees=
Breach of Contract Claims Against Bluegreen

The
1998 deeds from Bobby John Foster and Betty Yvon Lesley to Bluff Dale and Betty
Yvon Lesley and Kenneth Lesley to Bluff Dale contained the following notice
provision:  








Copies of any instruments dealing
with the leasing of the mineral rights on the property above described shall
either be furnished to Grantors direct or furnished to the depository bank
designated by them for transmission to them, including, but not necessarily
limited to, oil and gas leases, agreements for payment of bonuses, delay
rentals, overriding royalties, production payments or other matters affecting
the minerals or royalty interests.

 

The Lesley
Appellees alleged that Bluegreen breached the notice provisions in the deeds by
failing to provide them with notice of the filing of the declarations of
covenants.  The trial court granted summary judgment to the Lesley Appellees on
their claim.  The trial court declared that ABluegreen
breached the contractual requirement of the Lesley/Foster to Bluff Dale Deed
and the Lesley to Bluff Dale Deed by failing to give the requisite notice of
the filing of the Declarations of Covenants.@

Bluegreen
was not a party to the Lesley Appellees=
deeds to Bluff Dale.  Bluegreen asserts that it has no contractual liability to
the Lesley Appellees because (1) privity of contract did not exist between it
and the Lesley Appellees and (2) the notice provisions in the deeds were
personal covenants that did not run with the land.  In Texas, covenants that
run with the land bind the heirs and assigns of the covenanting parties, while
personal covenants do not.  Montfort v. Trek Res., Inc., 198 S.W.3d 344,
355 (Tex. App.CEastland
2006, no pet.); Tarrant Appraisal Dist. v. Colonial Country Club, 767
S.W.2d 230, 235 (Tex. App.CFort
Worth 1989, writ denied).  A covenant runs with the land if (1) it touches and
concerns the land, (2) it relates to a thing in existence or specifically binds
the parties or their assigns, (3) it is intended by the original parties to run
with the land, and (4) the successor to the burden has notice.  Inwood N.
Homeowners= Ass=n v. Harris, 736 S.W.2d
632, 635 (Tex. 1987); Montfort, 198 S.W.3d at 355.  Therefore, Bluegreen
could be liable to the Lesley Appellees for breach of contract only if the
notice provisions in the Lesley Appellees=
deeds to Bluff Dale run with the land.








Covenants
that run with the land generally burden or restrict the use of the land.  Montfort,
198 S.W.3d at 354-56 (Grantor agreed to furnish fresh water from the land to
the house and to the grantee for the purpose of watering the grantee=s livestock.); Voice of
Cornerstone Church Corp. v. Pizza Prop. Partners, 160 S.W.3d 657, 666 (Tex.
App.CAustin 2005, no
pet.) (A restrictive covenant providing that property would be used only for
commercial and light industrial purposes Aburdened
the property itself.@);
Rolling Lands Invs., L.C. v. Nw. Airport Mgmt., L.P., 111 S.W.3d
187, 200 (Tex. App.CTexarkana
2003, pet. denied) (A restriction concerning fueling rights touched and
concerned the land because it limited the use to which the land could be
put.).  Bluff Dale=s
covenants in the deeds to provide copies of instruments dealing with leasing of
mineral rights were mere notice requirements.  The covenants did not burden or
restrict Bluff Dale=s
exercise of the executive rights in any fashion.  As such, the contractual
notice requirements did not run with the land and did not bind Bluegreen.[14]

The
trial court erred in granting summary judgment to the Lesley Appellees on their
breach of contract claims against Bluegreen and in denying summary judgment to
Bluegreen on those claims.  We sustain Bluegreen=s
third issue and Bluegreen=s
fifth issue to the extent that Bluegreen asserts the trial court erred in
denying its motion for summary judgment on the Lesley Appellees= breach of contract claims,
and we render judgment that the Lesley Appellees take nothing on their breach
of contract claims against Bluegreen.    

                               Appellees= Tortious Interference
Claims Against Bluegreen

Appellees
alleged various tortious interference claims against Bluegreen.  Bluegreen
moved for traditional and no-evidence summary judgments on those claims, and
the trial court denied the motions.  The trial court=s summary judgment order in this cause did not
dispose of the tortious interference claims, and those claims are not part of
this severed cause.  Instead, the tortious interference claims remained in the
original cause.  Because appellees=
tortious interference claims are not part of this cause, we will not address
Bluegreen=s sixth
issue or Bluegreen=s
contention that the trial court erred in denying its traditional and no-evidence
motions for summary judgment on appellees=
tortious interference claims.

                                           Lesley
Appellees= Deed
Reformation Claims








The
Lesley Appellees=
reformation claims involve the February 17, 1998 deed from Bobby John Foster
and Betty Yvon Lesley to Bluff Dale and the September 30, 1998 deed from Betty
Yvon Lesley and Kenneth Lesley to Bluff Dale.  Before their conveyances to
Bluff Dale, the Lesley Appellees owned the entire surface estate and a one-half
mineral interest in the subject property.  The Lesley Appellees= deeds to Bluff Dale
contained identical mineral reservation clauses: AGrantors
will be reserving unto themselves, their heirs and assigns, one-fourth (1/4) of
the oil, gas, sulphur and other minerals to which Grantors are now entitled to
in all of the lands covered by this conveyance.@   
      The Lesley Appellees asserted that, under their deeds to Bluff Dale, they
reserved a one-fourth mineral interest and conveyed a one-fourth mineral
interest to Bluff Dale.  In July 2006, Bluegreen and the POA filed counterclaims
for declaratory judgment in which they alleged that the Lesley Appellees
reserved a one-eighth mineral interest and conveyed a three-eighths mineral
interest to Bluff Dale.  In August 2006, the Lesley Appellees filed their
second supplemental petition in which they sought reformation of the mineral
reservation clauses in their deeds to Bluff Dale on the ground of mutual
mistake.

To
support a claim for reformation, the Lesley Appellees alleged that they
intended to reserve a one-fourth mineral interest in their deeds to Bluff Dale
but that, Aby reason
of a scrivener=s error
and/or a mutual mistake,@
their deeds to Bluff Dale Amay
not have accurately reflected the quantum of mineral interest that [they]
intended to reserve.@ 
They further alleged that, if any question existed as to the amount of the
mineral interest that they reserved in the deeds, the question had resulted
from Aa mutual mistake
between the Lesley Plaintiffs and their grantee.@ 
The Lesley Appellees requested the trial court to reform the mineral
reservations in the deeds to read as follows: AGrantors
will be reserving unto themselves, their heirs and assigns, one-half of the
oil, gas, sulphur and other minerals to which Grantors are now entitled to in
all of the lands covered by this conveyance.@   
            The Lesley Appellees filed a motion for summary judgment on their
reformation claims and on the claims asserted by Bluegreen and the POA in their
counterclaims for declaratory judgment.  Bluegreen and various lot owners filed
motions for summary judgment in which they sought a declaration that the Lesley
Appellees reserved a one-eighth mineral interest in their deeds to Bluff Dale. 
The trial court granted the Lesley Appellees=
motion and denied the other motions.  The trial court declared that the mineral
reservation clauses in the deeds were ambiguous and reformed the deeds on the
ground of mutual mistake.








The
underlying objective of reformation is to correct a mutual mistake made in preparing
a written instrument so that the instrument truly reflects the original
agreement of the parties.  Cherokee Water Co. v. Forderhause, 741 S.W.2d
377, 379 (Tex. 1987).  Reformation requires proof of two elements: (1) an
original agreement and (2) a mutual mistake, made after the original
agreement, in reducing the original agreement to writing.  Id.  If a
mistake has been made by a scrivener or typist, an instrument may be reformed
and modified by a court to reflect the true agreement of the parties if the
mistake was a mutual mistake.  Henderson v. Henderson, 694 S.W.2d 31, 34
(Tex. App.CCorpus
Christi 1985, writ ref=d
n.r.e.); Louviere v. Power, 389 S.W.2d 333, 335 (Tex. Civ. App.CWaco 1965, writ ref=d n.r.e.).  Bluegreen
argues that the trial court erred in reforming the deeds because they were
unambiguous.  However, the fact that a written instrument is couched in
unambiguous language, that the parties knew what words were used and were aware
of their ordinary meaning, or that they were negligent in failing to discover
the mistake before signing the instrument will not preclude relief by
reformation.  Marcuz v. Marcuz, 857 S.W.2d 623, 627 (Tex. App.CHouston [1st Dist.] 1993,
no writ); Brinker v. Wobaco Trust Ltd., 610 S.W.2d 160, 164 (Tex. Civ.
App.CTexarkana 1980,
writ ref=d n.r.e.).

The
Lesley Appellees executed the deeds to Bluff Dale in 1998.  They filed their
reformation claim in this cause on August 10, 2006.  The four-year statute of
limitations governs a suit for reformation of a deed.  Brown v. Havard,
593 S.W.2d 939, 943 (Tex. 1980); Cullins v. Foster, 171 S.W.3d 521, 531
(Tex. App.CHouston
[14th Dist.] 2005, pet. denied).  The Lesley Appellees acknowledged in their
motion for summary judgment that their suit for reformation was timely filed
only if the statute of limitations was tolled for an appropriate period of
time.  Bluegreen and the POA asserted in their responses to the Lesley
Appellees= motion that
the statute of limitations barred the Lesley Appellees= reformation claims.

Texas
courts apply the discovery rule to reformation claims based on mutual mistake. 
Under the discovery rule, the statute of limitations does not begin to run
until the party seeking reformation knew or, in the exercise of reasonable
diligence, should have known of the mistake in the deed.  Brown, 593
S.W.2d at 944; Cullins, 171 S.W.3d at 531; Broyles v. Lawrence,
632 S.W.2d 184, 187-88 (Tex. App.CAustin
1982, no writ).  








The
Lesley Appellees presented an affidavit of Betty Yvon Lesley in support of
their motion for summary judgment.  In the affidavit, Betty Yvon Lesley stated
that, after closing the transactions with Bluegreen in 1998, she and her
husband, Kenneth Lesley, believed that they had reserved a one-fourth mineral
interest in the deeds.  She also stated that she and Kenneth were informed by
their attorneys in June 2006 Athat
an adverse claim to 1/8th of our minerals would be forthcoming.@  The Lesley Appellees
assert that they did not have notice of the mutual mistake in the deeds until
they learned about the adverse claim in June 2006 and that, therefore, the
discovery rule tolled the statute of limitations until that time.

In
Brown, the Texas Supreme Court considered the ambiguous nature of the
language used in a mineral reservation clause in a deed in determining whether
the party seeking reformation in the exercise of reasonable diligence should
have known of the mistake in the deed.  Brown, 593 S.W.2d at 944.  The
court explained that the mistake was not Aso
plainly evident as to charge [the grantee] with the legal effect of the words
used.@  Id. 
Therefore, the court concluded that the grantee could not be charged as a
matter of law with knowledge of the mistake.  Id.

In
this case, the trial court found that the Lesley Appellees= deeds to Bluff Dale
contained ambiguous mineral reservation clauses that could be interpreted as
reserving one-eighth mineral interests.  Whether a deed is ambiguous is a
question of law for the court, which we review de novo.  Johnson v. Conner,
260 S.W.3d 575, 579 (Tex. App.CTyler
2008, no pet.); Gore Oil Co. v. Roosth, 158 S.W.3d 596, 599 (Tex. App.CEastland 2005, no pet.).  A
court=s primary goal
when construing a deed is to ascertain the true intention of the parties as
expressed in the Afour
corners@ of the
instrument.  Luckel v. White, 819 S.W.2d 459, 461 (Tex. 1991).  If a
written instrument, such as a deed, is worded in such a way that a court may
properly give it a certain or definite legal meaning or interpretation, it is
not ambiguous.  R & P Enters. v. LaGuarta, Gavrel & Kirk, Inc.,
596 S.W.2d 517, 519 (Tex. 1980); Gore Oil Co., 158 S.W.3d at 599. 
However, if a written instrument remains reasonably susceptible to more than
one meaning after the rules of interpretation have been applied, then the
instrument is ambiguous.  R & P Enters., 596 S.W.2d at 519; Gore
Oil Co., 158 S.W.3d at 599.    

Before
the Lesley Appellees executed the deeds to Bluff Dale, they owned a one-half 
mineral interest in the subject property.  Thus, they were Aentitled to@ one-half of the minerals. 
In their deeds to Bluff Dale, they Areserv[ed]
unto themselves, their heirs, and assigns, one-fourth (1/4) of the oil, gas,
sulphur and other minerals to which Grantors are now entitled to in all of the
lands covered by this conveyance.@ 
Under the clear language in the deeds, the Lesley Appellees reserved
one-fourth  of their one-half mineral interest.  Therefore, the Lesley
Appellees reserved a one-eighth mineral interest.  Because the deeds can be
given a definite legal meaning and are not reasonably susceptible to more than
one meaning, they are unambiguous.  R & P Enters., 596 S.W.2d at
519.








The
Lesley Appellees knew that they owned a one-half mineral interest before their
conveyances to Bluff Dale.  By reading the clear language in their deeds to
Bluff Dale, they would have known that they were reserving one-fourth of their
one-half mineral interest.  Based on the reasoning in Brown, the
mistakes, if any, in the Bluff Dale deeds were Aso
plainly evident as to charge [the Lesley Appellees] with the legal effect of
the words used.@  See
Brown, 593 S.W.2d at 944.   As a matter of law, the Lesley Appellees in the
exercise of reasonable diligence should have known of the mistakes in the deeds
when they executed the deeds.  Their reformation claims are barred by the
four-year statute of limitations.

The
trial court erred in granting summary judgment to the Lesley Appellees on their
reformation claims.  We sustain Bluegreen=s
fourth issue.  Based on our ruling that limitations barred the Lesley Appellees= reformation claims, we
need not address (1) whether the Lesley Appellees met their summary judgment
burden of establishing the elements of their reformation claims or (2) the
matters raised by the Landowner Appellants in their fifth issue.  We reverse
the trial court=s
judgment on the Lesley Appellees=
reformation claims, including Section II of the trial court=s order. Because Bluegreen
and the Landowner Appellants did not affirmatively move for summary judgment on
the statute of limitations issue, we do not render judgment in their favor on
the Lesley Appellees=
reformation claims.  Instead, we remand the Lesley Appellees= reformation claims to the
trial court for further proceedings consistent with this opinion.

                                                         VLB=s Sovereign Immunity

Appellees
named the VLB as a lot owner defendant in their pleadings.  The VLB filed a
plea to the jurisdiction based on sovereign immunity.  The trial court denied
the VLB=s plea to the
jurisdiction.  In its sole appellate issue, the VLB contends that the trial
court erred in denying its plea to the jurisdiction.

A
plea to the jurisdiction challenges the trial court=s authority to determine the subject matter of
a specific cause of action.  Tex. Dep=t
of Transp. v. Jones, 8 S.W.3d 636, 638-39 (Tex. 1999).  Sovereign immunity
from suit defeats a trial court=s
subject-matter jurisdiction.  Id.  Whether a trial court has
subject-matter jurisdiction is a question of law subject to de novo review.  Tex.
Natural Res. Conservation Comm=n
v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002).  Accordingly, we review a trial
court=s order denying
a jurisdictional plea based on sovereign immunity de novo.  Id.








The
VLB is a state agency.  Sovereign immunity, unless waived, protects the State
and various divisions of state government, such as agencies, from lawsuits for
damages.  Wichita Falls State Hosp. v. Taylor, 106 S.W.3d 692, 694 n.3
(Tex. 2003); Gen. Servs. Comm=n
v. Little-Tex Insulation Co., 39 S.W.3d 591, 594 (Tex. 2001).  Immunity
from suit bars a suit against the State unless the legislature expressly
consents to the suit by statute or resolution granting express legislative
permission.  Little-Tex, 39 S.W.3d at 594.  Legislative consent to sue
the State must be expressed in Aclear
and unambiguous language.@ 
IT-Davy, 74 S.W.3d at 854.  

Certain
types of declaratory judgment actions do not implicate the State=s sovereign immunity.  IT-Davy,
74 S.W.3d at 855.  In such actions, a party need not obtain consent to sue the
State.  For example, A[p]rivate
parties may seek declaratory relief against state officials who allegedly act
without legal or statutory authority.@ 
Id.  Such suits do not constitute Asuits
against the State@
because suits to compel state officers to act within their official capacity do
not attempt to subject the State to liability.  Id.  In this case,
appellees did not seek declaratory relief against any official of the VLB. 
Appellees only sued the VLB.  In addition, a party may bring a declaratory
judgment action against the State seeking a declaration as to the party=s rights and status under a
statute or an ordinance.  IT-Davy, 74 S.W.3d at 859-60; Tex. Educ.
Agency v. Leeper, 893 S.W.2d 432, 446 (Tex. 1994).  In this case, appellees
did not seek a declaration as to their rights and status under any statute or
ordinance.        

A
private party cannot circumvent the State=s
sovereign immunity from suit by characterizing a suit for money damages, such
as a contract dispute, as a declaratory judgment claim.  City of Houston v.
Williams, 216 S.W.3d 827, 828-29 (Tex. 2007); IT-Davy, 74 S.W.3d at
856.  Therefore, a suit for monetary damages against a sovereign is not
transformed into a viable suit by a request for a declaratory judgment.  Williams,
216 S.W.3d at 829.  








In
their appellate brief, appellees assert that, in their declaratory judgment
action, they Aasked
for construction of the parties=
respective rights under a deed in their chain of title.@  The Texas Declaratory Judgments Act
authorizes a person interested under a deed to have determined any question of
construction arising under the deed and to obtain a declaration of rights, status,
or other legal relations thereunder.  Tex.
Civ. Prac. & Rem. Code Ann. '
37.004(a) (Vernon 2008); City of Anson v. Harper, 216 S.W.3d 384, 394
(Tex. App.CEastland
2006, no pet.).  In their brief, appellees focus on two aspects of their claims
for declaratory relief:  (1) their request for a declaration as to the holder
of the executive rights and (2) their request that the covenants prohibiting
mineral development were unenforceable.  Appellees assert that these requests
did not implicate sovereign immunity and that they Ahave not sought liability or monetary damages
from the VLB.@

A
review of appellees=
pleadings shows that they sought to recover money damages from the VLB, whether
or not the VLB owned the executive rights.  Appellees initially alleged that
the VLB and the other lot owners owned the executive rights in the minerals
underlying their lots.  Later, appellees amended their pleadings and alleged
that Bluegreen had retained the executive rights.  In their live pleading,
appellees alleged that ADefendants
Bluegreen, the POA, or the Lot Owners . . .  may be owners of executive rights
to lease the minerals underlying the Development.@ 
Appellees further alleged that A[s]uch
ownership rights shall be determined by the Court.@  Appellees alleged breach of contract and
breach of fiduciary duty claims against A[t]he
Defendants holding the executive rights as such holders shall be determined by
the Court.@  They also
alleged that Aall
Defendants, whether owners of the executive leasing rights or not, have aided
and abetted the Defendants holding executive rights in breaching their duties
by accepting deeds purporting to incorporate mineral development restrictions
and by their own continued adherence to the Non-Development Covenants@ and that, by engaging in
such conduct, the defendants had breached contractual obligations to them. 
Appellees sought to recover damages from defendants for the alleged breaches of
fiduciary duty and contract.  Sovereign immunity bars appellees= claims for money damages
against the VLB; therefore, the trial court erred in denying the VLB=s plea to the jurisdiction
with respect to these claims.

Appellees
sought a declaratory judgment that Bluegreen owned the executive rights.  In
their brief, appellees acknowledge that their request for declaratory relief
involved title to the executive rights.  However, they assert that, because
they did not seek to obtain title to the executive rights in a trespass to try
title action, their request for declaratory judgment did not implicate
sovereign immunity.  In ruling on appellees=
request, the trial court had to determine whether Bluegreen retained the
executive rights or conveyed the executive rights to the lot owners.








A
declaratory judgment action may be brought Awhen
the sole issue concerning title to real property is the determination of the
proper boundary line between adjoining properties.@  Tex.
Civ. Prac. & Rem. Code Ann. '
37.004(c) (Vernon 2008).  This case does not involve a boundary dispute. 
Instead, this case involves rival claims to the executive rights.   A trespass
to try title action, and not a declaratory judgment action, is the proper
method of adjudicating rival claims to the executive rights.  See Martin v.
Amerman, 133 S.W.3d 262, 267 (Tex. 2004); Ely v. Briley, 959 S.W.2d
723, 727 (Tex. App.CAustin
1998, no pet.) (A trespass to try title action is the exclusive remedy by which
to resolve competing claims to property.); Bell v. State Dep=t of Highways and Pub.
Transp., 945 S.W.2d 292, 294 (Tex. App.CHouston
[1st Dist.] 1997, writ denied), abrogated by Harris County v. Sykes, 136
S.W.3d 635 (Tex. 2004).  In a trespass to try title action, the prevailing
party=s remedy is
title to, and possession of, the real property interest at issue in the suit.  Porretto
v. Patterson, 251 S.W.3d 701, 708 (Tex. App.CHouston
[1st Dist.] 2007, no pet.). 

Although
appellees did not assert a trespass to try title claim, their request for
declaratory relief was similar to a trespass to try title claim.  Appellees
requested the trial court to determine competing claims to ownership of the
property:  appellees=
claim that Bluegreen had retained the executive rights versus the lot owners= claim that Bluegreen had
conveyed the executive rights to them.  By making their claim for declaratory
relief, appellees squarely placed the VLB=s
title to the executive rights in issue.  Appellees sought a determination
against the VLB on that issue.  A trespass to try title action against the
State requires legislative consent.  State v. Lain, 349 S.W.2d 579, 582
(Tex. 1961) (AWhen in
this state the sovereign is made a party defendant to a suit for land, without
legislative consent, its plea to the jurisdiction of the court based on
sovereign immunity should be sustained.@);
Porretto, 251 S.W.3d at 707-08; State v. Beeson, 232 S.W.3d 265,
271 n.5 (Tex. App.CEastland
2007, pet. abated).  We find that, by placing title to the executive rights in
issue, appellees=
request for declaratory relief implicated the VLB=s
sovereign immunity.  Therefore, based on the reasoning in Lain and its
progeny, sovereign immunity bars appellees=
claim for declaratory relief on the ownership of the executive rights= issue.

Appellees
assert that their request for a declaratory judgment that the covenants
prohibiting mineral development were unenforceable did not implicate sovereign
immunity.  Appellees also requested declarations that the covenants could not
be used (1) to prohibit mineral leases covering the subject property or (2) to
prohibit appellees=
rights of self-exploration and self-development of their mineral interests on
the subject property.  By requesting these declarations, appellees sought to
affect the use of the VLB=s
surface estate.  Appellees assert that, as owners of the dominant mineral
estate, they have the right to Amake
reasonable use of the entirety of the surface of the Mountain Lakes Development@ to extract their minerals.








While
a mineral interest owner has no possessory interest in the surface estate, the
surface is burdened in the mineral interest owner=s
or his lessee=s favor
with certain necessarily implied easements of ingress and egress and for the
use of such portions of the surface for drilling, storing, pumping, and
transporting as are incidental to the full enjoyment of the mineral interest
owner=s or his lessee=s exclusive privilege to
drill for, produce, and market the oil and gas.  Mobil Pipe Line Co. v.
Smith, 860 S.W.2d 157, 159 (Tex. App.CEl
Paso 1993, writ dism=d
w.o.j.); see also Sun Oil Co. v. Whitaker, 483 S.W.2d 808, 810-11 (Tex.
1972).  Appellees=
requests for declaratory relief sought to burden the VLB=s property with these implied easements.  In Beeson,
landowners filed a declaratory judgment action against the State in which they
sought to establish an easement on the State=s
property.  Beeson, 232 S.W.3d at 270-71.  We held that the landowners= easement claims implicated
sovereign immunity and that, therefore, sovereign immunity barred their suit.  Id.
at 271-72.  Likewise, in this case, sovereign immunity bars appellees= claims for declaratory
relief concerning the covenants against mineral development as they relate to
the VLB=s property.

The
Lesley Appellees asserted their deed reformation claims against the VLB.  The
Lesley Appellees alleged that they intended to reserve a one-fourth mineral
interest, and they sought to reform the deeds on the ground of mutual mistake. 
We have held that the Lesley Appellees unambiguously reserved a one-eighth
mineral interest in their deeds to Bluff Dale.  Thus, by their mutual mistake claim,
the Lesley Appellees effectively sought to increase their one-eighth mineral
interest to a one-fourth mineral interest and to decrease the VLB=s three-eighths mineral
interest to a one-fourth mineral interest.  As such, the Lesley Appellees
attempted to adjudicate the State=s
title to its mineral interest.  Therefore, the Lesley Appellees= deed reformation claims
against the State are barred by sovereign immunity.  Lain, 349 S.W.2d at
582.

Appellees
contend that the VLB waived sovereign immunity by seeking affirmative relief. 
In Reata Constr. Corp. v. City of Dallas, 197 S.W.3d 371, 373 (Tex.
2006), the City of Dallas sued a private party for negligence.  In Reata,
the supreme court held that, when a governmental entity asserts affirmative
claims for monetary relief, the entity leaves Aits
sphere of immunity@
and that, therefore, the adverse party may assert, as an offset, claims germane
to, connected with, and properly defensive to those asserted by the
governmental entity.  197 S.W.3d at 376-77.  In such a situation, the trial
court acquires subject-matter jurisdiction over the adverse party=s claims to the extent they
offset the sovereign=s
claims.  Id. at 377.








The
VLB did not assert an affirmative claim for monetary damages in this case.  In
its original answer, the VLB prayed for recovery of Aits attorney fees and costs of court; and for
such other and further relief to which [it] may be justly entitled.@  In an amended answer, the
VLB abandoned its request for attorneys=
fees.  Appellees assert that the VLB=s
request for attorneys=
fees, costs, and such other and further relief for which it may be justly
entitled constituted a waiver of sovereign immunity.  The VLB sought to recover
its attorneys= fees
and costs in response to appellees=
claims against it.  The VLB=s
defensive claims for attorneys=
fees and costs did not constitute affirmative claims for monetary relief under Reata. 
Lamesa Indep. Sch. Dist. v. Booe, 251 S.W.3d 831, 833 (Tex. App.CEastland 2008, no pet.) (A[T]he court=s opinion in Reata
cannot be construed to encompass LISD=s
request for attorney=s
fees as an affirmative claim for relief.@);
Bexar Metro. Water Dist. v. Educ. & Econ. Dev. Joint Venture, 220
S.W.3d 25, 32 (Tex. App.CSan Antonio
2006, pet. dism=d )
(Governmental entity=s
general pleadings for judgment and costs were not Athe types of affirmative claims for monetary
relief contemplated in Reata.@). 
The VLB did not waive its immunity by its conduct in this case.         

For
the above reasons, sovereign immunity bars appellees= claims against the VLB.  The trial court
erred in denying the VLB=s
plea to the jurisdiction.  We sustain the VLB=s
issue.

                                                               This
Court=s Ruling

We
reverse the judgment of the trial court in its entirety.  We render judgment
that appellees take nothing on their breach of fiduciary duty claims against Bluegreen
and the Landowner Appellants and on their breach of contract claims against
Bluegreen.[15]  We dismiss
appellees= claims
against the VLB for lack of jurisdiction.  We remand the remainder of the
claims to the trial court for further proceedings consistent with this opinion.

 

 

TERRY McCALL

            JUSTICE     

January 22, 2009

Panel consists of:  Wright, C.J.,

McCall, J., and Boyd, S.J.[16]









[1]Bobby John Foster died on September 27, 2005.





[2]Thus, although appellees now contend that Bluegreen in
effect kept the executive rights because Bluegreen had imposed the restrictive
covenants, appellees also sought to have the restrictive covenants declared
unenforceable.  





[3]By accepting the restrictive covenants, the lot owners
agreed not to allow mineral development on their tracts unless two-thirds of
the owners agreed to change the restriction.





[4]The record does not demonstrate whether Bluegreen
currently owns any lots in the Mountain Lakes Development.  Bluegreen may own
the executive rights with respect to lots, if any, that it owns.  Appellees
alleged that A[b]y deed dated January 16,  2006 . . . Bluegreen
purported to specifically convey all executive leasing rights it owned in
Mountain Lakes to the Property Owners Association.@





[5]Appellees contend that the Landowner Appellants did not
preserve for appeal the issue of ownership of the executive rights and that the
trial court=s judgment must be affirmed as to lot owners who do not
appeal.  The Landowner Appellants preserved the issue for review by raising it
in their response to appellees= motion for
summary judgment on the ownership of the executive rights. The respective
rights of Bluegreen, the POA, the Landowner Appellants, and the lot owners who
did not appeal as to the ownership of the executive rights are interwoven.  The
executive rights issue is the same for all of these parties:  Bluegreen either
conveyed the executive rights or did not convey them.  Therefore, we reverse
the trial court=s declaration that Bluegreen owned the executive rights
as to all parties.  Turner, Collie & Braden, Inc. v. Brookhollow, Inc.,
642 S.W.2d 160, 166 (Tex. 1982) (A reversal as to an appealing party justifies
a reversal as to nonappealing parties Awhere
the respective rights of the appealing and nonappealing parties are so
interwoven or dependent on each other as to require a reversal of the entire
judgment.@); Belz v. Belz, 667 S.W.2d 240, 244 (Tex. App.CDallas 1984, writ ref=d
n.r.e.) (AThe applicable standard is that reversal is required
when the rights of appealing and nonappealing parties are so interwoven or
dependent on each other as to require reversal of the whole judgment when a
part thereof is reversed.@).





[6]The issue of the duty owed by the owner of the
executive rights to non-executive mineral owners does not appear to be a proper
subject matter of relief under the Uniform Declaratory Judgments Act.  Tex. Civ. Prac. & Rem. Code Ann. ' 37.004(a) (Vernon 2008).       





[7]In addition to addressing the fiduciary duty issue, the
Bass court considered whether an implied covenant to develop the mineral
estate existed.  Bass, 113 S.W.3d at 743.  The court refused to imply a
covenant to develop.  Id. at 744.               





[8]Properties of the Southwest executed the deeds of trust
before changing its name to Bluegreen.  Because Properties of the Southwest and
Bluegreen were the same entity, we treat Bluegreen as having executed the deeds
of trust.                          





[9]Likewise, there is no evidence that any other lot owner
or the POA exercised the executive rights.   





[10]As stated earlier, we do not construe such declarations
or complying with them as an exercise of the executive rights.  





[11]Appellees rely on Cone v. Fagadau Energy Corp.,
68 S.W.3d 147 (Tex. App.CEastland 2001, pet. denied), in arguing that, as
mineral co-tenants, they have a right to develop their minerals.  Appellees
have correctly stated the common-law rule; however, the Lesley Appellees
relinquished the right to self-develop the minerals when they conveyed the
executive rights to Bluegreen.                        





[12]Had the Lesley Appellees retained the executive rights
and the correlative right to develop, the restriction against mineral
development would not prohibit them from exercising the rights.  Prop.
Owners of Leisure Land, Inc. v. Woolf & Magee, Inc., 786 S.W.2d
757, 760 (Tex. App.CTyler 1990, no writ) (AThe
mineral owner, having the dominant estate, cannot be limited by subdivision
restrictions imposed by surface owners after the estate is severed.@).  





[13]Based on our rulings on the Landowner Appellants= first and third issues, we need not address their
sixth issue (accommodation doctrine issue).  





[14]For the same reason, the contractual notice
requirements did not bind Bluegreen=s
grantees.    





[15]In this opinion, we have sustained, in part, Bluegreen=s fifth issue with respect to appellees= breach of fiduciary duty claims and breach of contract
claims.  For the reasons stated above, we overrule the remainder of Bluegreen=s fifth issue.   





[16]John T. Boyd, Retired Chief Justice, Court of Appeals,
7th District of Texas at Amarillo sitting by assignment.