GORE OIL COMPANY d/b/a Crego Exploration et al., Appellants,

v.

Steve ROOSTH, Trustee; New Horizons Oil & Gas, Ltd.; and John D. Procter, Trustee, Appellees.

No. 11–03–00167–CV.

Court of Appeals of Texas, Eastland.

Jan. 20, 2005.

John R. Woodward, Woodward & Shaw, Steven C. Haworth, Law Office of Steven C. Haworth, Dallas, for appellants.

J. Bennett White, Wilson, Sheehy, Knowles, Robertson & Cornelius, Tyler, Donald M. Hunt, Mullin Hoard & Brown, L.L.P., Lubbock, for appellees.

Panel consists of: ARNOT, C.J., and WRIGHT, J., and McCALL, J.

Opinion

W.G. ARNOT, III, Chief Justice.

The issue in this appeal is whether the grantor's or the grantee's successors-in-interest should bear the burden of outstanding mineral and nonparticipating royalty interests. Appellees, Steve Roosth, Trustee; New Horizons Oil & Gas, Ltd.; and John D. Procter, Trustee, are successors-in-interest to the grantor, Peyton McKnight. Appellees brought suit against the leasehold interest owners [1] and others [2] after the leasehold interest owners failed to pay appellees the full amount to which they claimed to be entitled. Appellees sought a declaratory judgment as to their proportionate share of the royalties,[3]

---

1. Appellants are the leasehold interest owners, commonly referred to in the industry as working interest owners. They are Gore Oil Company d/b/a Crego Exploration; Browning Oil Company, Inc.; The Pickens Company, Inc.; W.C. Pickens, Jr.; and Cody Texas, L.P.

2. Appellees also brought suit against other owners of the property, but those defendants settled their disputes with appellees and are not parties to this appeal.

3. This dispute involves a one-eighth (1/8) nonparticipating royalty interest and a fractional interest that is approximately a one-sixteenth (1/16) nonparticipating royalty interest. For the ease of the reader, these interests shall be referred to as a 1/8 and 1/16 royalty interest except in the actual language of the deed which is the subject of this dispute.

sought damages for conversion, and requested attorneys' fees. Appellees contended that the reservation made by McKnight was in addition to the previous outstanding mineral and royalty interests. The defendant leasehold interest owners contended that the reservation made by McKnight was reduced by the outstanding mineral and royalty interests. The parties entered into a stipulation regarding all of the facts other than attorneys' fees. The trial court found in favor of appellees; entered judgment against the leasehold interest owners for past royalties in the amount of $271,210.21; awarded prejudgment interest in the amount of $29,838.14; and awarded attorneys' fees in the amount of $45,180.12, plus $35,000.00 if the judgment is affirmed in the court of appeals, plus another $25,000.00 if the judgment is affirmed in the Texas Supreme Court. The leasehold interest owners appeal. We modify and affirm.

The leasehold interest owners present five issues on appeal. In the first issue, they complain of the trial court's entry of findings of fact based upon stipulated evidence and of the lack of evidence to support those findings. In the second issue, they contend that the trial court erred in construing the McKnight deed. In the third issue, the leasehold interest owners contend that the trial court erred in finding that they were estopped from denying appellees' claimed ownership of the royalty interest. In the fourth issue, the leasehold interest owners argue that the trial court erred in attempting to reform the McKnight deed. In their final issue, the leasehold interest owners contend that the trial court erred in awarding prejudgment interest.

### Construction of the McKnight Deed

The McKnight deed, a general warranty deed from McKnight to Eagle Investment Company, provided in relevant part as follows:

HAVE GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL AND CONVEY unto the said Grantee all that certain tract or parcel of land situated in Knox County, Texas, described as follows ("Property"), to-wit:

\* \* \*

Grantor unto himself, his heirs and assigns, reserves free of all liens a full one-eighth (1/8) non-participating royalty interest in the Property subject to any previously conveyed or reserved mineral interest as may appear of record in Knox County, Texas.

This conveyance is made and accepted subject to all restrictions, reservations, covenants, conditions, rights-of-way and easements now outstanding and of record, if any, in Knox County, Texas, affecting the above described property.

The trial court concluded that the McKnight deed was ambiguous and that the intent of the parties to the deed was for McKnight to reserve a full 1/8 royalty interest in the property undiminished by the outstanding mineral and royalty interests that had previously been conveyed or reserved. The trial court also found that the leasehold interest owners' predecessors in title had accepted, ratified, and revived appellees' interpretation of the McKnight reservation because an affidavit in the chain of title placed others on notice that both the grantor and the grantee in the McKnight deed intended and agreed that the reserved 1/8 royalty be undiminished by the prior reservations and conveyances and because the leasehold interest owners' predecessors had accepted deeds subject to all of the permitted encumbrances expressly listing both the 1/8 McKnight reservation and the reservations that were already outstanding at the time

of the McKnight reservation. The trial court concluded further that the leasehold interest owners are estopped to deny that McKnight reserved an undiminished 1/8 royalty interest.

■ In order to determine if the trial court erred in its construction of the McKnight deed, we must first determine the appropriate standard of review. The first issue we must address is whether the deed is ambiguous. That question is a question of law for the court and, therefore, will be reviewed de novo. *Reilly v. Rangers Management, Inc.*, 727 S.W.2d 527, 529 (Tex.1987); *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc.*, 596 S.W.2d 517, 519 (Tex.1980); *see Barber v. Colorado Independent School District*, 901 S.W.2d 447, 450 (Tex.1995). Seldom have courts found deeds to be ambiguous. *See, e.g., J. Hiram Moore, Ltd. v. Greer*, 2004 WL 3019204, —— S.W.3d ——, —— (December 31, 2004) (holding a deed to be ambiguous where one clause "conveys nothing" and another clause "conveys everything").

■ A court's primary goal when construing a deed is to ascertain the true intention of the parties as expressed within the "four corners" of the instrument. *See Luckel v. White*, 819 S.W.2d 459, 461 (Tex. 1991). The four corners rule requires the court to ascertain the intent of the parties solely from all of the language in the deed. *Concord Oil Company v. Pennzoil Exploration and Production Company*, 966 S.W.2d 451, 465 (Tex.1998). The intent that governs, however, is not the intent that the parties meant but failed to express but, rather, the intent that is expressed. *Harlan v. Vetter*, 732 S.W.2d 390, 392 (Tex.App.-Eastland 1987, writ ref'd n.r.e.). If a written instrument, such as a deed, is worded in such a way that a court may properly give it a certain or definite legal meaning or interpretation, it

is not ambiguous. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc., supra.* However, if a written instrument remains reasonably susceptible to more than one meaning after the established rules of interpretation have been applied, then the instrument is ambiguous and extrinsic evidence is admissible to determine the true meaning of the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk, Inc., supra; see Sun Oil Company (Delaware) v. Madeley*, 626 S.W.2d 726 (Tex.1981); *Cherokee Water Company v. Forderhause*, 641 S.W.2d 522, 525 (Tex.1982).

■ The McKnight deed contains two "subject to" clauses. The leasehold owners correctly observe that the term "subject to" is a limiting, qualifying term and that, when used in a mineral deed, means "subordinate to," "subservient to," or "limited by." *Petty v. Winn Exploration Co., Inc.*, 816 S.W.2d 432 (Tex.App.-San Antonio 1991, writ den'd). The first "subject to" clause reads:

> Grantor unto himself, his heirs and assigns, *reserves* free of all liens a full one-eighth (1/8) non-participating royalty interest in the Property *subject to any previously conveyed or reserved mineral interest as may appear of record in Knox County, Texas.* (Emphasis added).

The leasehold owners argue that the "subject to" limitation is contained in the reservation clause and not the granting clause. The leasehold owners point out that the grant is a general grant of "all that certain tract or parcel of land." Consequently, the leasehold owners argue it is the reservation that is limited by the prior reservations and not the grant. The "subject to" clause modifies "reserves."

The leasehold owners would, harmonizing all of the language of the deed and relying on *Duhig v. Peavy–Moore Lumber*

Co., 135 Tex. 503, 144 S.W.2d 878 (1940), ascertain that the intent of the parties was that the 1/8 nonparticipating royalty interest reserved by McKnight *included* all of the other outstanding royalty interests of record.

After applying the *Duhig* principle to the first "subject to" clause, the leasehold owners address the second "subject to" clause which reads:

> This conveyance is made and accepted *subject to all* restrictions, *reservations,* covenants, conditions, rights-of-way and easements *now outstanding and of record,* if any, in Knox County, Texas, affecting the above described property. (Emphasis added)

■ The leasehold owners argue that this "subject to" clause makes the grant limited by the conveyance to all other reservations of record after first deducting the outstanding 1/16 royalty interest from McKnight's 1/8 royalty interest.[4] The leasehold owners argue that the second clause is a "belt and suspenders" type of language often used by scriveners and should be subjugated to the first clause.

In effect, the leasehold owners argue that the deed is unambiguous, that the grantor reserved a 1/8 royalty interest, and that the outstanding 1/16 royalty interest should be deducted from that 1/8 royalty interest. The deed conveys a 7/8 royalty interest and the remaining mineral interest.

In contrast, appellees argue that one cannot harmonize the two "subject to" clauses under the leasehold owners' interpretation. Appellees point out that the second "subject to" clause makes the grant subject to "all ... reservations." Consequently, the first "subject to" clause cannot be read to mean that the 1/8 royalty interest *includes* the 1/16 royalty interest because the second "subject to" clause clearly reads that the 1/8 royalty interest is *in addition to* the outstanding 1/16 royalty interest and all other reservations. Appellees find the deed ambiguous.

If not ambiguous, then appellees would have this court find, as a matter of law, by giving effect to all of the language and reading the deed as a whole, that the first "subject to" clause modifies the word "Property," the closest word to the clause, and not "reserves." Property is defined in the granting clause as "all that certain tract or parcel of land ... described as follows ('Property')." Therefore, property as used in the reservation clause, which uses the same capital P, is the same property as used in the granting clause. McKnight would receive the full 1/8 royalty interest he intended. The second "subject to" clause makes it clear that the parties intended for McKnight to reserve a full 1/8 royalty interest and to ensure that the reservation was not later vulnerable to a *Duhig* claim.

We hold that the McKnight deed is reasonably susceptible to more than one meaning. The paragraphs quoted above

---

4. To apply *Duhig* to the first "subject to" clause would make the second "subject to" reservation superfluous. It is not clear from the stipulation of evidence presented to the court, but it appears that there were no other outstanding mineral interests at the time of the McKnight deed, other than the 1/16 royalty interest. If this is the case, unless the clause was to guard against any unknown reservations of record, then we would have to disregard the language of the second "subject to" clause as having no effect. In construing a deed, we must assume that all of the words were intended to have meaning. If the clause was to guard against any unknown reservations of record, then a more reasonable reading would be that the parties intended for the Grantor to reserve the full and undiminished 1/8 royalty interest.

appear to make both the reservation and the conveyance "subject to" the prior outstanding conveyances and reservations. Clearly, it was not the intent of the parties to the McKnight deed for both the grantor and the grantee to bear the full burden of the outstanding 1/16 prior interests.

Since the intent of the parties cannot be determined from the plain language of the four corners, we must determine whether the various canons of construction aid in construing the McKnight deed. However, the canons of construction are not helpful in this case. The canons of construction lead to conflicting results, including the following canons: construe against the grantor and in favor of the grantee, construe against the scrivener (in this case the grantee), and specific clauses control over general clauses. *See* Bruce M. Kramer, *The Sisyphean Task of Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of Construction*, 24 TEX. TECH L. REV. 1 (1993). Consequently, we agree with the trial court that the deed is ambiguous.

### Estoppel

■ If the McKnight deed had not stated that the "conveyance is made and accepted subject to all restrictions, reservations, covenants, conditions, rights-of-way and easements now outstanding and of record" but merely conveyed the entire premises less the grantor's reservation of a full 1/8 nonparticipating royalty interest, we might agree with the leasehold interest owners that *Duhig v. Peavy–Moore Lumber Co.*, *supra*, and its progeny apply. Under *Duhig*, a grantor and his successors are estopped from claiming title in a reserved fractional mineral interest when to do so would, in effect, breach the grantor's warranty as to the title and interest purportedly conveyed to the grantee. *See, e.g., Blanton v. Bruce*, 688 S.W.2d 908

(Tex.App.-Eastland 1985, writ ref'd n.r.e.); *Jackson v. McKenney*, 602 S.W.2d 124 (Tex.Civ.App.-Eastland 1980, writ ref'd n.r.e.). The granting clause of the deed in *Duhig* purported to convey all of the land and minerals, and the reservation clause reserved a 1/2 mineral interest in Duhig, the grantor. However, Duhig did not own all of the minerals. A prior owner had also reserved a 1/2 interest. The supreme court held that, even though it was Duhig's intent to reserve a 1/2 mineral interest for himself, he was estopped from asserting a claim to that 1/2 mineral interest because of the prior outstanding reservation and the deed's purported conveyance of all of the minerals less only a 1/2 interest. *See Duhig v. Peavy–Moore Lumber Co.*, *supra* at 880. In this case, however, the McKnight deed contained an additional limiting clause stating that the conveyance was subject to all outstanding reservations, covenants, and restrictions. Consequently, we hold that *Duhig* does not apply and that the grantor and his successors in interest are not estopped from claiming title to the full 1/8 royalty.

■ Having determined that the deed is ambiguous and that appellees are not estopped by *Duhig*, we must determine whether the trial court erred in its construction of the deed based upon the stipulated evidence. When a written instrument is determined to be ambiguous, extrinsic evidence may be introduced to show the intent of the parties. *Smith v. Allison*, 157 Tex. 220, 301 S.W.2d 608, 612 (1956). In this case, other than the deed itself, the only evidence regarding the intent of the parties to the McKnight deed was an affidavit that had been filed in the county clerk's office. The affidavit was made by Thomas E. Morris, the attorney in fact for the grantee partnership in the McKnight deed. Morris filed the affidavit while his partnership still owned the prop-

erty, which was foreclosed upon shortly thereafter. Morris swore that it was his understanding, both at the time of the deed and the affidavit, that McKnight was to receive a full 1/8 royalty unreduced by the previous reservations. The Morris affidavit was subsequently listed as a prior encumbrance in various deeds in the leasehold interest owners' chain of title. There is nothing else in the stipulations relating to the intent of the parties to the McKnight deed.

Based upon the stipulations before the trial court, we must uphold the trial court's findings with respect to the parties' intent. Consequently, appellees are entitled to their share of the full 1/8 royalty that was intended to be reserved by McKnight. The first and second issues are overruled. We need not reach the third issue, which relates to whether the leasehold interest owners ratified the McKnight reservation or were estopped by the inclusion in their chain of title of deeds in which the Morris affidavit was listed as a prior encumbrance. TEX.R.APP.P. 47.1.

### Reformation

In their fourth issue, the leasehold interest owners contend that the trial court erred in re-forming the McKnight deed. Appellees did not request that the deed be reformed. Nothing in the pleadings or other documents filed with the trial court indicated that appellees were attempting to reform any deeds. Furthermore, the parties to the McKnight deed were not parties to this lawsuit, nor were all of the current successors-in-interest. Reformation was, therefore, inappropriate. Consequently, we sustain the fourth issue to the extent that the trial court found and concluded that the deed should be and has been reformed. However, we need not modify or reform the trial court's judgment in this case because the judgment does not contain any language ordering that the deed be reformed. *See In re Marriage of Edwards,* 79 S.W.3d 88, 100–01 (Tex.App.-Texarkana 2002, no pet'n).

### Prejudgment Interest

The trial court awarded appellees prejudgment interest in the amount of $29,838.14. Pursuant to TEX. NAT. RES. CODE ANN. 91.402(b) (Vernon 2001), prejudgment interest is not recoverable when reasonable doubt exists regarding a title dispute. *Concord Oil Company v. Pennzoil Exploration and Production Company, supra* at 462–63. In *Concord,* the court explicitly stated: "The Legislature has indicated very clearly in the Natural Resources Code that prejudgment interest is not due when disputes exist between a 'payor' and a 'payee' over oil and gas titles." *Concord Oil Company v. Pennzoil Exploration and Production Company, supra* at 463. The trial court's findings and conclusions on this issue are not supported by the record and are in conflict with Section 91.402(b). A title dispute clearly existed in this case, and prejudgment interest was not authorized. Consequently, the fifth issue is sustained, and the judgment of the trial court is modified to delete the award of prejudgment interest.

### Conclusion

The judgment of the trial court is modified to delete the award of prejudgment interest; and, as modified, the judgment is affirmed.