Opinion filed August 9, 2007

















 
 
  
 
 







 
 
  
 
 




Opinion filed August 9, 2007

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                 ____________

 

                                                          No. 11-06-00226-CV 

                                                    __________

 

                                  MOON ROYALTY, LLC, Appellant

                                                             V.

     BOLDRICK
PARTNERS D/B/A STATEWIDE MINERALS CO., Appellee

 



 

                                         On
Appeal from the 118th District Court

                                                        Howard County,
Texas

                                                   Trial
Court Cause No. 42,636

 



 

                                                                   O
P I N I O N

This is a declaratory judgment action to construe
assignments of royalty interest. 
Boldrick Partners d/b/a Statewide Minerals Co. filed suit against Moon
Royalty, LLC, and others seeking a declaration construing assignments from
Statewide to Moon, a constructive trust on disputed royalty payments, and
attorney=s
fees.  The parties filed cross motions
for summary judgment on the proper construction of the assignments.  The trial court granted Statewide=s motion, finding that it had not
conveyed the disputed interest.  The
trial court subsequently held an evidentiary hearing and awarded Statewide
attorney=s fees
through trial and conditional attorney=s
fees in the event of an appeal.  We
reverse and render in part and reverse and remand in part.

                                                             I.  Background Facts








Statewide offered to sell four lots of royalty and
overriding royalty interests at auction. 
The lots were grouped by county. 
Moon was the successful bidder on three lots, and Dwight Snell &
Associates acquired the fourth. 
Statewide executed assignments, dated June 10, 1996, to Moon and Snell.[1]  The assignments provided:

Assignor
does hereby Transfer, Assign, Convey and Deliver unto Assignee all of Assignors
royalty, overriding royalty and associated mineral interests as specifically
described on Exhibit AA@ (hereinafter called AInterests@)
in and to the oil and gas wells described therein (hereinafter called AProperties@).  It is specifically understood between
Assignor and Assignee that Assignor may own other interest in the Properties which
are not intended to be covered by this Assignment and such Interest are
specifically excluded herefrom.

 

The assignment to Snell had an effective date of June 12,
1996.  The assignments to Moon were
effective June 1, 1996.  The form of the
assignments was otherwise identical.

On July 11, 1996, Statewide executed corrected
assignments to Snell and Moon.[2]  The corrected assignments were all made
effective June 1, 1996.  The only other
change was the addition of language to the granting clause.  That clause (with the additional language
highlighted) read:

Assignor
does hereby Transfer, Assign, Convey and Deliver unto Assignee all of Assignors
royalty, overriding royalty and associated mineral interests as specifically
described on Exhibit AA@ (hereinafter called AInterests@)
in and to the oil and gas wells described therein (hereinafter called AProperties@)
and in and to the lands (hereinafter called ALands@). 
It is specifically understood between Assignor and Assignee that
Assignor may own other interest in the Properties which are not intended to be
covered by this Assignment and such interest are specifically excluded
herefrom.  (emphasis added)

 

That same month, Snell conveyed the interests it acquired from
Statewide to Moon.

The AExhibit
A@ referenced in the original and
corrected assignments consisted of a table with the following headings:

ASSIGNOR    ASSIGNEE   
DATE    DESCRIPTION   COUNTY  
STATE   WELL NAME    RI   
ORRI    BOOK    PAGE








For each listed interest, the tables described the conveyance to
Statewide by naming the assignor, the date of the assignment, and the volume
and page where the assignment was recorded. 
The description column included section and block information for each
interest.  The RI and ORRI columns
identified the royalty or overriding royalty percentages being assigned. 

This dispute concerns two wells, the McCartor
#309C in Ochiltree County and the Royston-Smith Unit #1-A in Fisher County.  Neither well was listed by name in Exhibit A,
but the land on which the wells were located is.  The trial court held that, as a matter of
law, the corrected assignments did not convey any interest in either well.  The trial court subsequently conducted a
bench trial to address all remaining issues, and its final judgment included an
award of attorney=s fees
through trial and a conditional award of appellate attorney=s fees.

                                                                       II.  Issues

Moon challenges the trial court=s summary judgment ruling and final
judgment with four issues.  Moon argues
that the trial court misinterpreted the assignments or, alternatively, that the
assignments were ambiguous, and that the trial court erroneously awarded Statewide
attorney=s fees.

In its fifth issue, Moon argues that, if this court affirms the
trial court=s
judgment, Statewide was not entitled to attorney=s
fees.  In light of our holding on the
first and third issues, we do not reach the fifth issue.  Tex.
R. App. P. 47.1.

                                                                     III.
Analysis

A. 
Standard of Review.

We will apply the well‑recognized standard
of review for traditional summary judgments. Questions of law are reviewed de
novo.  St. Paul Ins. Co. v. Tex. Dep=t of Transp., 999 S.W.2d 881 (Tex.
App.CAustin
1999, pet. denied). When cross motions are filed and the trial court
grants one and denies the other, we review all issues presented and enter the
judgment that the trial court should have entered.  Bradley v. State ex rel. White, 990
S.W.2d 245, 247 (Tex.
1990).  To determine if a fact question
exists, we must consider whether reasonable and fair-minded jurors could differ
in their conclusions in light of all the evidence presented.  Goodyear Tire & Rubber Co. v. Mayes,
No. 04-0993, 2007 WL 1713400 (Tex.
June 15, 2007).  We must consider all the
evidence in the light most favorable to the nonmovant, indulging all reasonable
inferences in favor of the nonmovant, and determine whether the movant proved
that there were no genuine issues of material fact and that it was entitled to
judgment as a matter of law. Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d
546 (Tex. 1985); City of Houston
v. Clear Creek
Basin Auth., 589 S.W.2d 671 (Tex. 1979).

 








B. Are the Assignments Ambiguous? 

Both parties tendered extrinsic evidence to the
trial court explaining why the additional language was added to the granting
clause.[3]  We may not consider this evidence absent a
determination that the assignments are not fully integrated or that they are
ambiguous.  Sun Oil Co. (Del.) v. Madeley,
626 S.W.2d 726, 731 (Tex. 1981) (parole evidence rule circumscribes the use of
extrinsic evidence when interpreting an integrated document); Middleton v.
Broussard, 504 S.W.2d 839, 841 (Tex. 1974) (when a document is unambiguous,
the parties= intent
is determined from the document=s
language).  

Neither party contends that the assignments are
not fully integrated.  Thus, we need only
determine if they are ambiguous, which is a question of law.  Myers v. Gulf Coast Minerals Mgmt. Corp.,
361 S.W.2d 193, 196 (Tex. 1962).  A
document is ambiguous when the application of the pertinent rules of
interpretation to the face of the instrument leaves the court genuinely
uncertain which one of two or more meanings is the proper meaning.  Universal C.I.T. Credit Corp. v. Daniel,
243 S.W.2d 154, 157 (Tex. 1951).  Lack of
clarity does not create an ambiguity.  Forbau
v. Aetna Life Ins. Co., 876 S.W.2d 132, 134 (Tex. 1994).  Our primary goal is to ascertain the parties= true intention as expressed in the
document.  Luckel v. White, 819
S.W.2d 459, 461 (Tex. 1991).  The intent
that governs, however, is not the intent that the parties meant but failed to
express but, rather, the intent that is expressed.  Gore Oil Co. v. Roosth, 158 S.W.3d
596, 599 (Tex. App.CEastland
2005, no pet.).








Texas courts have developed rules of
interpretation to determine a contract=s
meaning and canons of construction to determine its legal effect.  The rules of interpretation may be utilized
to determine if an agreement is ambiguous, but the canons of construction do
not apply absent a determination of ambiguity. 
Stewman Ranch, Inc. v. Double M. Ranch, Ltd., 192 S.W.3d 808, 811
(Tex. App.CEastland
2006, pet. denied); see also Bruce M. Kramer, The Sisyphean Task of
Interpreting Mineral Deeds and Leases: An Encyclopedia of Canons of
Construction, 24 Tex. Tech L. Rev.
1, 110-11 (1993) (canons such as Aconstrue
against the grantor@ should
not replace rational thought when reading a written instrument or be used if
the document=s
language is clear).

The rules of interpretation include:

1.         Construe the agreement as a whole;

 

2.         Give each word and phrase its plain, grammatical meaning
unless it definitely appears that such meaning would defeat the parties= intent;

 

3.         Construe
the agreement, if possible, so as to give each provision meaning and purpose so
that no provision is rendered meaningless or moot;

 

4.         Express
terms are favored over implied terms or subsequent conduct; and

 

5.         Surrounding
circumstances may be considered B
not to determine a party=s
subjective intent B but to
determine the appropriate meaning to ascribe to the language chosen by the
parties.

 

Mark K. Glasser & Keith A. Rowley, On Parol:  The Construction and Interpretation of
Written Agreements and the Role of Extrinsic Evidence in Contract Litigation,
49 Baylor L. Rev. 657, 664-82
(1997).

Utilizing these rules of interpretation, the
assignments are not ambiguous.  Statewide
contends that, because the granting clause was limited to the interests Aas specifically described on Exhibit
>A=@
and because the clause referenced the possibility that Statewide might own
other interest in Athe
Properties which are not intended to be covered by this Assignment,@ the corrected assign-ments covered
only royalty interests in the listed wells. 
Statewide argues that, if the assignments covered all of its interests
in a particular tract, then there would be no reason to describe the specific
fractional interests Moon was to receive or to describe the specific wells
included.








Statewide=s
interpretation would render the additional language meaningless. The granting
clause originally contained two defined terms: Interests and Properties.
Properties was defined as Statewide=s
interests in the oil and gas wells described in Exhibit A and Interests as the
royalty described in Exhibit A.   The
revised granting clause added a third defined term: Lands.  Originally, the assignments transferred
Statewide=s
Interests in the Properties.  The
corrected assignments transferred Statewide=s
Interests in the Properties and the Lands.  Because Lands was a separately defined term
and because Statewide conveyed its interests in both the Properties and the
Lands, the term Lands must refer to something other than the listed wells to
have any meaning.  Utilizing the plain
meaning of the word land, and looking at the four corners of the corrected
assignments, this term necessarily refers to the tracts described by block and
section in Exhibit A.

This interpretation gives meaning and purpose to
both the original and additional language. 
If Properties refers to the listed wells and Lands the listed tracts,
then Statewide assigned royalty interest in the listed acreage B whether a well was present or not B and in the listed wells B whether they are located on one of the
described tracts or not.

Nor are we persuaded by Statewide=s argument that the reference to other
interests Statewide might own is further indication that the corrected
assignment was limited to the listed wells. 
The reference to other interests Statewide might own was limited to
other interests Statewide might own in the AProperties.@ 
Because Properties was defined as the oil and gas wells listed in
Exhibit A, the reference to other interests owned simply indicated that
Statewide might own other interests in the described wells.  It has no bearing on the meaning of the term
Lands.

Moreover, Statewide=s
position is in response to a broader argument than Moon advances.  The assignments describe specific conveyances
into Statewide.  The reference to other
interest in the Properties left open the possibility that there were other
unlisted conveyances into Statewide.  If
so, Moon does not claim that it acquired any portion of that interest.  By specifying the specific fractional interest
transferred, the assignments also left open the possibility that a conveyance
into Statewide conveyed a greater percentage of ownership than was being
assigned by Statewide.  If so, we do not
construe the assignments to convey a greater ownership percentage than that
listed in the RI and ORRI columns.

Finally, Statewide argues that it is impossible to
determine what fractional interest Moon received in the Royston-Smith Unit #1-A
well or the McCartor #309C well.  This is
incorrect.  Moon received whatever
fractional interest was listed for the tracts upon which the wells are
located.  The record suggests that the
Royston-Smith Unit #1-A well is in Section 1, Block 21, T & P Survey,
Fisher County, Texas.  If so, Moon
received the .0025 overriding royalty interest Statewide acquired from Craig A.
Jordan.  Similarly, the record suggests
that the McCartor #309C well is in Section 309, Block 43, J & TC Survey,
Ochiltree County, Texas.  If so, Moon
received the .01625 overriding royalty interest that Statewide acquired from
the John W. McDowell Estate.








Moon=s
first issue is sustained.  This makes it
unnecessary to address Moon=s
second issue.  Because we have granted
Moon=s request
for substantive relief, we also sustain Moon=s
third issue and reverse the trial court=s
award of attorney=s fees
and remand this case for further consideration of that issue.  This holding makes it unnecessary to address
Moon=s fourth
and fifth issues.  Rule 47.1.

                                                                     IV.
Holding

The trial court=s
summary judgment and final judgment are reversed.  Judgment is rendered that Moon acquired
Statewide=s
interest in the Royston-Smith Unit #1-A well and the McCartor #309C well to the
extent that interest was acquired by Statewide in a conveyance listed in the
Exhibit A to the corrected assignments and limited to the percentage of
ownership listed in the Exhibit A for that conveyance.  The case is remanded to the trial court for
further consideration of the attorney=s
fee award.

 

 

RICK
STRANGE        

JUSTICE

 

August 9, 2007

Panel
consists of:  Wright, C.J.,

Strange,
J., and Hill, J.[4]











[1]The parties have advised us that there were separate
assignments for each county.  The record
contains the assignment to Snell but only one of the three assignments to
Moon.  Because there is no dispute that
the relevant language was identical in each assignment, we will operate on that
assumption.





[2]The record contains two of the three corrected
assignments to Moon.  For the reasons
expressed previously, we will assume that the third contained the same
language.





[3]Statewide argues that the additional language was added
to address Moon=s concern that the assignments conveyed only a well
bore interest and not the entire proration unit.  Moon agrees that it was concerned about
receiving a well bore only assignment but contends that, when this situation
was discussed, Statewide represented that the assignments included all revenue
attributable to the lands covered by any listed interest.





[4]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.