Affirmed in Part, Reversed and Rendered in Part and Reversed and
Remanded in Part and Opinion filed March 26, 2009








 

Affirmed
in Part, Reversed and Rendered in Part and Reversed and Remanded in Part and
Opinion filed March 26, 2009.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO.  14-07-00050-CV

____________

 

HEADINGTON OIL COMPANY, L.P., ON
ITS OWN BEHALF AND AS SUCCESSOR-IN-INTEREST TO HEADINGTON CANADA CORP. AND
HEADINGTON OIL COMPANY AND BRUCE GARY D/B/A GARY OIL AND GAS, Appellants

 

V.

 

MODESTO WHITE, JR.  AND RICHARD N. 
EVANS,
Appellees

 



 

On Appeal from the 344th
District Court

Chambers County, Texas

Trial Court Cause No. 16,550

 



 

O P I N I O N








Headington Oil Company, L.P. and Bruce Gary appeal a
judgment awarding unpaid royalties on the sale of oil and gas, prejudgment
interest, attorney=s fees, and expert-witness fees to the
appellees.  Headington appeals the award of statutory prejudgment interest
because it is barred by a Asafe harbor@ provision; the
award of attorney=s fees because the appellees are not Aprevailing parties@; and the award of
expert-witness fees because they are not taxable court costs.  Gary joins
Headington in contending that the trial court erred in awarding prejudgment
interest and expert-witness fees.  Gary further argues that the trial court
erred in awarding royalties against him based on all production in the field,
rather than just one specific well, and that the statute of limitations bars
most of the claimed royalties.  We reverse the trial court judgment and remand
for recalculation of the damages awarded against Gary, as well as the attorney=s fees awarded
against both appellants. 

The Facts

This appeal involves ten years of litigation aimed at
recovering the possession of oil and gas royalties allegedly withheld by
successive well operators.  Appellee Modesto White, Jr., owns a fractional
non-participating royalty interest in oil and gas produced from a property
known as the Luke Bryan Survey, Abstract 41, in Chambers County.  In January
1993, White assigned an undivided one-fourth interest in his then-existing
ownership interest jointly to Rex G. Fortenberry and appellee Richard N. Evans.


In 1994, Headington purchased leases on the Luke Bryan
Survey where producing oil and gas wells already existed.   In August of that
year, Headington requested signatures on division orders from each of the known
interest ownersCboth royalty and working interestsCto authorize
payment of royalties on two wells known as the Furl White No. 1 and the Pearl
White No. 1.  These division orders set forth the names of and fractional
interests held by each of the sixty-five interest owners, including White,
Fortenberry and Evans.  Additionally, the division orders provided that the
appellees and Fortenberry together owned a 0.003777 total fractional royalty
interest.  








Evans returned the division order to Headington unsigned,
maintaining that the order incorrectly stated the proper ownership interests of
Evans, Fortenberry, and White.  In a letter accompanying the returned order,
Evans stated that the correct total interests owned by White, Evans, and
Fortenberry was 0.053571Ca difference of 0.049794 from the interest
amount recited in the division order, and almost five percent of the total
fractional interests in the two wells.  Evans enclosed with the letter copies
of relevant court decisions and other documents to substantiate his
contention.  Based on this information, Headington placed the royalties
accruing to White, Evans, and Fortenberry in a suspense account while it
studied the matter to Adetermine the correct ownership for each
interest.@  In so doing, Headington stated that it would seek
additional information from prior lease operators.  

In January 1995, Evans demanded payment from Headington of
accrued royalties based on the combined 0.053571 royalty interest, citing
rights guaranteed under the prevailing Texas oil and gas statutes.  Later, in
December of that year, having still not received payment, Evans demanded it
again.  In January 1996, Headington informed Evans that it was still trying to
clarify the ownership interests, and stated that it had commissioned a
supplemental title opinion on the lease.  Headington contended that it would be
impossible to determine ownership interest amounts without such an opinion.   

On November 6, 1996, White, Evans, and Bettie FortenberryCthe late Rex
Fortenberry=s widowCmade another
demand for payment of royalties.  The parties continued to discuss this demand
in light of Headington=s efforts to obtain a title opinion.

On March 17, 1997, White filed suit in the Chambers County
district court against Headington and Graham Royalty Ltd., the prior operator
of the lease, alleging trespass, wrongful eviction, and conversion of
royalties, and seeking to determine title.  White further asked the court to
determine his fractional royalty interest, and to quiet title to it.  White=s petition alleged
that he owned a 0.0491 fractional interest in the wells.  Headington answered
with a general and verified denial.  








On October 27, 1997, Headington forwarded to Evans a
limited title report prepared by A. Wayne Breeland.  In his report, Breeland
stated that circumstances in the chain of title prevented him from being able
to Aseparately state
the interests owned by [White], and his assigneees [Evans] and [Fortenberry].@  But Breeland was
able to state the total interests owned in combination by a group consisting of
White, Evans, Fortenberry, Melovee White, and Gielda White.  Melovee and Gielda
were also known fractional royalty interest owners in the Luke Bryan Survey.  

Between 1997 and 2003, White and Evans filed five more
amended petitions against Headington.  Along the way, they dropped their claims
against Graham Royalty Ltd., but added Melovee White, Gielda White, and other
parties as co-defendants.  During this period the appellees narrowed their
causes of action against the defendants to the recovery of unpaid royalties,
prejudgment interest, attorney=s fees, and the reformation of the deed to
reflect White=s conveyance to Fortenberry and Evans.  In each of
their amended pleadings, the first through the fifth, the appellees sought to
recover unpaid royalties based on their claim of a 0.053571 fractional royalty
interest in the lease.  Melovee and Gielda White filed counter-claims against
White and Evans to secure their title rights on the lease, as well as
cross-claims against Headington and other well operators for royalties based on
the disputed interests. 

In May 1998, Headington assigned the lease on the Luke
Bryan Survey to the Pearl River Corporation.  Pearl River=s contract
operator, Bruce Gary, took over operation of four wells on the lease, including
the Furl White No. 1 and the Pearl White No. 1.  Headington informed Gary that
title to some of the royalty interests was disputed.  Headington also
transferred its suspense account to Gary, who did not pay royalties to White,
Evans, or Fortenberry=s estate; but instead, Gary continued
Headington=s practice of holding the royalties in suspense until
the dispute was resolved.  Gary operated the wells until October 1, 2000, when
it transferred operations, along with the suspended funds, to American Coastal
Energy.








In July 2005, the appellees filed a seventh amended
petition against Headington, Gary, the assignee of Fortenberry=s heir, and
another producer on the lease.  In this complaint, the appellees sought an
accounting of all production on the Luke Bryan Survey for a specified period,
unpaid royalties based on this production, prejudgment interest, attorney=s fees,
expert-witness fees, and a reformation of the deed to reflect White=s conveyance to
Evans and Fortenberry.  For the first time, the appellees based their claim for
unpaid royalties on a combined 0.01577116 fractional royalty interest.  This
new royalty amount was taken from a title-opinion letter commissioned by
Headington and prepared by attorney T. Michael Harrell.

In response to this amended pleading, Headington filed a
stipulation and interpleader with the trial court.  Headington stipulated that
appellees held title to a 0.01577116 fractional royalty interest in the Luke Bryan
Survey.  Further, Headington deposited into the registry of the court
$38,310.20, a royalty amount based on the 0.01577116 combined interest, pending
the signing of a final judgment as to the claims between the appellees and
Melovee and Gielda White.

The parties tried the case to the bench on March 28, 2006. 
Neither Melovee White nor any representative of Gielda White=s estate[1]
appeared for trial.  At the beginning of the proceedings, the appellees
announced that settlements had been reached with all of the operators except
Headington and Gary.  In trying the appellees= claims against
Headington and Gary, the court heard testimony from White, Evans, Gary, and two
other witnesses.  The court found in favor of the appellees, awarding them the
royalties held in the court registry, additional royalties owed by Gary,
prejudgment interest, attorney=s fees, and expert-witness fees.  The
court also dismissed all of Melovee=s  and Gielda
White=s claims  based on
their failure to appear, and filed findings of fact and conclusions of law. 
This appeal followed.

Analysis








In three issues, Headington contends that the trial court
erred by awarding the appellees prejudgment interest, attorney=s fees, and
expert-witness fees.  Gary asserts two issues on the same grounds. 
Additionally, Gary asserts a third issue arguing that the trial court
improperly assessed damages based on the production of gas from all
Gary-operated wells on the lease, rather than just the Furl White No.  1, and
that the statute of limitations barred most of the royalties claimed against
Gary.    

A.      Standard
of Review

Most of Headington=s and Gary=s issues concern
the trial court=s conclusions of law.  We review such
conclusions de novo.  In re Moers, 104 S.W.3d 609, 611 (Tex. App.CHouston [1st
Dist.] 2003, no pet.).  If the evidence supports the conclusions under any
legal theory, we will sustain them.  Id.  By contrast, we do not review
findings of fact de novo, as they have the same force and dignity as a jury=s verdict.  See
Huang v. Don McGill Toyota, Inc., 209 S.W.3d 674, 679 (Tex. App.CHouston [14th
Dist.] 2006, no pet.).  We must afford findings their proper weight, but when a
complete reporter=s record is filed, they are not
conclusive.  Id. 

B.      Prejudgment
Interest

In their first issue, both Headington and Gary argue that
the trial court erred in awarding prejudgment interest.  The court based its
award on section 91.403 of the Texas Natural Resource Code, which provides that
an operator must pay interest to the royalty owner when royalty payments are
not made within the time frame set by section 91.402.  Tex. Nat. Res. Code Ann.
_ 91.403 (Vernon
2001).  Headington and Gary argue that section 91.403 does not apply in this
case, because they both qualify under the Asafe harbor@ provision of
section  91.402(b).  This subsection provides that payments may be withheld
without interest beyond the time limits set out in subsection (a) when there is
a dispute concerning title that would affect the distribution of payments.  Id.
_ 91.402(b)(1)
(Vernon 2001 & Supp. 2008).  








The purpose of section 91.402 is to protect royalty owners
from intentional payment delays, but to permit delays that result from
legitimate title disputes.  Browning Oil Co., Inc. v. Luecke, 38 S.W.3d
625, 647 (Tex. App.CAustin 2000, pet. denied) (citing Concord
Oil Co. v. Pennzoil Exploration & Prod. Co., 966 S.W.2d 451, 461 (Tex.
1998)).  Headington and Gary contend that a legitimate title dispute existed in
this case because there was a clear disagreement over the proper amount of the
appellees= fractional royalty interest.  Appellees respond that
there was never any dispute regarding their entitlement to royaltiesCmerely to the
amount.  Appellees contend that such a disagreement on the amount of appellees= fractional
royalty interest does not qualify as a Atitle dispute@ under section
91.402(b).

The trial court=s findings of fact
establish that the parties stipulated to a 0.01577116 fractional royalty
interest in the Luke Bryan Survey.  But the stipulation occurred only several
months before trialCeight years after the appellees filed
their original petition.  The appellate record shows that there was a clear
disagreement regarding the appellees= fractional
royalty interest from the date that the appellees refused Headington=s division order
until Headington filed its stipulation and interpleader in response to the
appellees= seventh amended petition.  In that petition, the
appellees reduced their prior claim of a combined 0.053571 royalty interest to
a combined 0.01577116 interest, less than one-third of the amount they had
claimed for the previous eight years.  At trial, Evans testified that they
reduced the amount in response to the Harrell title opinion.  Evans further
testified that while he still disagreed with Harrell=s calculation, he
adopted it in the appellees= seventh amended petition in the hope that
Headington and Gary would agree and deposit the accrued royalties into the
registry of the court.  The record shows that Headington did that in December
2005, leaving prejudgment interest and legal fees as the only issues to be
resolved.  








The circumstances here parallel those in Concord Oil Co.
v.  Pennzoil Exploration and Production Co., 966 S.W.2d 451 (Tex. 1998),
the Texas Supreme Court=s only case to date applying section
91.402.  In Concord Oil, the court reviewed a mineral-rights deed that
appeared to convey two different royalty interests.  The deed=s granting clause
expressly conveyed an undivided one-ninety-sixth interest in all minerals under
the tract, while a later clause described the interest as Aone-twelfth (1/12)
of all rentals and royalty of every kind and character.@  Id.  at
453.  After holding that the deed was ambiguous, and construing it to convey a
one-twelfth interest, the court reversed the trial court=s award of
prejudgment interest under section 91.403, stating, AThere is no doubt
that a dispute concerning title exists in this case.@  Id.  at
461.  The court went on to say, AThe Legislature
has indicated very clearly in the Natural Resources Code that prejudgment
interest is not due when disputes exist . . . over oil and gas titles.@  Id. at
463.   

Likewise, the Eastland Court of Appeals applied Concord
Oil=s reasoning in a
case construing another ambiguous mineral deed.  Gore Oil Co. v. Roosth,
158 S.W.3d 596 (Tex. App.CEastland 2005, no pet.).   After
determining that the trial court had correctly construed the deed in favor of
the successors-in-interest to the original grantor, the court addressed whether
the operator owed prejudgment interest under section 91.403.  Because the central
issue of the case was determining the amount of the royalty interest held by
the grantor=s successor, the court held that a title dispute Aclearly existed@ and,
consequently, Aprejudgment interest was not authorized@ under the
statute.  Id.  at 602 (relying on Concord Oil, 966 S.W.2d at
463).   

Concord Oil Co. and Gore Oil Co. establish that
prejudgment interest under section 91.403 is not appropriate when a legitimate
dispute exists regarding the amount of royalty the claimant owns.  See
Concord Oil Co., 966 S.W.2d at 463; Gore Oil Co., 158 S.W.3d at 602.


The appellees assert that, when there is no disagreement as
to the existence of some ownership rights, a mere disagreement as to the
amount of a royalty interest is not a title dispute sufficient under
section 91.402(b) to deny prejudgment interest.  In making this argument, the
appellees rely upon Stable Energy, L.P. v. Newberry, 999 S.W.2d 538
(Tex. App.CAustin 1999, pet. denied), and Browning Oil Co.,
Inc. v. Luecke, 38 S.W.3d 625 (Tex. App.CAustin 2000, pet.
denied).  








In Stable Energy, the Austin Court of Appeals upheld
an award of prejudgment interest under section 91.403 against operators who had
failed to pay royalties to royalty-interest owners.  999 S.W.2d at 553B54.  In that case,
however, the issue was not a dispute concerning the amount of royalty owned by
the claimants; it was a dispute concerning whether the operator had any
obligation under an assigned lease to pay the claimantsCsuccessors-in-interest
to the original grantorCwhen the operator had received no notice
of a change of interest ownership.  Id.  at 544.  The court held that
the operator was liable for arbitrarily electing to stop payment based on a
flawed understanding of a lease assignment.  Id.  Because the operator=s failure to pay
royalties was based on a breach of contract, rather than a legitimate title
dispute, the court upheld the award of prejudgment interest under section
91.403.  Id.  Because neither the amount nor legitimacy of the claimant=s overriding
royalty interests was at issue in Stable Energy, it does not further the
appellees= argument.

Browning Oil Co. is also distinguishable.  In that case,
the Austin Court of Appeals again upheld an award of prejudgment interest under
section 91.403.  38 S.W.3d at 648.  The unpaid royalties in that case resulted
from the violation of the various leases= pooling
provisions, not from disputes about the amount of the interest or who owned
it.  Id.  at 647B48.  Browning Oil Co. does not
support the appellees= argument. 

Finally, the appellees assert that no title dispute existed
because no other party claimed the disputed royalty interests.  Headington and
Gary respond that the competing claims of Melovee and Gielda White prove that
the title was disputed.  But the appellees deny the existence of any dispute
between themselves and Melovee and Gielda White.  The appellees contend that
they brought Melovee and Gielda White into the suit only for strategic purposes
related to the fourth amended petition.  Further, the appellees argue that the
only affirmative claims Melovee and Gielda White made were against Headington
and Gary.  The appellate record belies both assertions.  








First, the appellees included both Melovee and Gielda White
in every amended petition save the seventh.  Moreover, Melovee and Gielda White
filed common-law and statutory counter-claims against White and Bettie
Fortenberry in 1998.  White and Evans answered the counter-claims with a joint
general denial.  Although White and Evans non-suited Melovee and Gielda White
in 2006, the counter-claims remained, and served as the basis for Headington=s interpleader
filing.  Likewise, despite Melovee White=s absence at
trial, her claims, and those of Gielda White=s estate, were
still being asserted on the day of trial.  These competing claims further
substantiate the existence of a legitimate title dispute under section 91.402.

The record establishes that a disagreement existed among
Headington, Gary, and the appellees regarding the correct amount of the
appellees= fractional royalty interest from the date that
appellees refused the division order until Headington filed its stipulation and
interpleader.  Because the disagreement affected Headington=s and Gary=s abilities to
distribute royalty payments in accordance with section 91.402(a), it was a
title dispute.  Under section 91.402(b), this title dispute extinguished any
liability for prejudgment interest.  See Concord Oil Co., 966 S.W.2d at
461B63; Gore Oil
Co., 158 S.W.3d at 602; see also Edwin M. Jones Oil Co. v. Pend Oreille
Oil & Gas Co., 794 S.W.2d 442, 450B51 (Tex.  App.CCorpus Christi
1990, writ denied).  We sustain the appellants= first issue.

C.      Expert-Witness
Fee

Headington and Gary=s third issue on
appeal relates to the court=s award of expert-witness fees White
incurred in preparing for trial.  Headington and Gary each contend that expert-witness
fees are not taxable court costs.  White replies that the trial court properly
awarded the expert-witness fees as a sanction for prolonging the litigation.








Texas Rule of Civil Procedure 131 provides that A[t]he successful
party to a suit shall recover of his adversary all costs incurred therein,
except where otherwise provided.@  See Roberts
v. Williamson, 111 S.W.3d 113, 124 (Tex. 2003).  But recoverable costs do
not generally include expert-witness fees.  See AVCO Corp. v.  Interstate
Sw., Ltd., 251 S.W.3d 632, 662 (Tex. App.CHouston [14th
Dist.] 2007, pet. denied) (citing King v. Acker, 725 S.W.2d 750, 755
(Tex. App.CHouston [1st Dist.] 1987, no writ) and City of
Houston v. Biggers, 380 S.W.2d 700, 705 (Tex. Civ. App.CHouston 1964, writ
ref=d n.r.e.)).  If
the trial court taxes costs other than those customarily taxed, it may do so
only for good cause stated on the record.  See Tex. R. Civ. P. 141; Roberts,
111 S.W.3d at 124.  

AGood cause@ is determined on
a case‑by‑case basis.  Furr=s Supermarkets,
Inc. v. Bethune, 53 S.W.3d 375, 376B77 (Tex. 2001); Rogers
v. Walmart Stores, Inc., 686 S.W.2d 599, 601 (Tex. 1985).  In Rule 131
cases, an appellate court should scrutinize the record to determine whether it
supports the trial judge=s decision to tax the prevailing party
with part, or all, of the costs.  Rogers, 686 S.W.2d at 601 (citing Bruni
v. Vidaurri, 140 Tex. 138, 166 S.W.2d 81, 96 (1942)).  Typically though, Agood cause@ has meant that
the prevailing party unnecessarily prolonged the proceedings, unreasonably
increased costs, or committed some other offense.  Bethune, 53 S.W.3d at
377.  Unless the record demonstrates an abuse of discretion, we should not
disturb on appeal the trial judge=s assessment of
costs for good cause.  Rogers, 686 S.W.2d at 601. 

In its conclusions of law, the trial court explained its
award of expert-witness fees:

Under Texas Rules of Civil Procedure 191.2,[2]
the Court allows the recovery of the Certified Public Account[ant] fees for
good cause that neither Headington Oil Company or Bruce Gary made the effort to
produce production figures of total production until the day of trial.

In addition, the trial court=s findings of fact
included the following:








Headington Oil Company [and Bruce
Gary] refused to pay Modesto White Jr.  his portion of the proceeds from the
sale of of oil and gas it produced from the Luke Bryan Survey, Abstract 41,
Chambers County, Texas, according to his ownership which required him to employ
a certified public accountant to research the records to determine the
production and proceeds from the sale of his royalty as provided in Section
91.403 of the Natural Resources Code, Title 3, of the Statutes of the State of
Texas.

The trial court
appears to have based its award of expert-witness fees on Headington=s and Gary=s alleged failures
to produce production figures.  The court relied on Rule 191.2, which mandates
cooperation in pre-trial discovery.  See Tex. R. Civ. P.  191.2.  But
although the court=s findings of fact state that White was Arequired to employ@ an accountant to
determine production on the lease, the court=s findings do not
recite a failure to cooperate with any discovery request by either Headington
or Gary.  The record does show that appellees requested production of a number
of court records, namely trial-court records from prior litigation involving White=s interest.  But
even these records were publicly available.  There is no finding or evidence on
appeal establishing that Headington or Gary failed to cooperate in discovery or
abused the discovery process.  

As we have
previously stated, Headington and Gary held the appellees= royalties in
suspense due to a legitimate title dispute as permitted under section 91.402. 
Such a lawful suspense of royalties by itself is not a failure to cooperate
with discovery.  Nor can it qualify as Aunnecessarily
prolonging@ the litigation in this case.  Headington=s stipulation to
the fractional royalty interest amountCthe central issue
in this caseCwas in response to the appellees= action of
abandoning their original claim and adopting the interest amount described in
the Harrell title opinion, an opinion Headington commissioned.  Had the
appellees not adopted the royalty-interest amount promoted in the Harrell title
opinion, we can only presume that this matter would have remained in dispute,
to be decided at trial. 

Because neither
the court=s findings, nor the appellate record, demonstrate that
either Headington or Gary failed to cooperate in discovery or unnecessarily
prolonged the proceedings, the trial court abused its discretion in awarding
the cost of expert-witness fees to White.  We sustain Headington=s and Gary=s third issue. 








D.      Statute of
Limitations

In his second issue, Gary asserts that the statute of
limitations foreclosed the trial court=s award of damages
to White and Evans.  The appellees reply that Gary offered no proof at trial
that limitations applied.  Further, the appellees contend that limitations do
not apply because Gary=s possession of unpaid royalties amounted
to a constructive trust.  Neither the trial court=s conclusions of
law nor the final judgment mention either a constructive trust or limitations. 
Instead, the judgment simply sets out an award of royalties for the full period
for which Gary operated the wells.

The statute of limitations for the recovery of royalty
payments is four years.  Koch Oil Co. v. Wilber, 895 S.W.2d 854, 864
(Tex. App.CBeaumont 1995, writ denied) (citing Dvorken v. Lone
Star Indus. Inc., 740 S.W.2d 565, 566 (Tex. App.CFort Worth 1987,
no writ)).  At trial, Gary offered unrebutted testimony that he operated the
Furl White No. 1 well from around May 1998 until October 1, 2000.  Gary also
testifiedCand the record confirmsCthat he was not
added to the suit until March 4, 2004.  Gary presented the trial court with
sufficient proof to establish that limitations bars the appellees= claims against
him concerning events before March 4, 2000. 

The appellees= argument
regarding the application of a constructive trust fails for three reasons. 
First, the imposition of a constructive trust requires either a breach of
fiduciary duty or actual fraud; the appellees have neither pleaded nor proven
these claims.  See Willis v. Donnelly, 118 S.W.3d 10, 35B36 (Tex. App.CHouston [14th
Dist.] 2003), rev=d in part on other
grounds, 199 S.W.3d 262 (Tex. 2006).  Second, the trial court failed to impose a
constructive trust in either its conclusions of law or final judgment.  In any
event, a constructive trust would still be subject to limitations.  See
Mowbray v. Avery, 76 S.W.3d 663, 691 (Tex. App.CCorpus Christi
2002, pet. denied) (citing Carr v. Weiss, 984 S.W.2d 753, 762 (Tex. App.CAmarillo 1999,
pet. denied)).








We sustain Gary=s limitations
issue as it relates to the appellees= claims predating
March 4, 2000.  Because limitations do not bar the award of royalties accruing
from March 4 through October 1, 2000, we remand this issue to the trial court
to determine the proper amount of unpaid royalties for this period.

E.     Scope of Damages

In Gary=s second issue, he contends that the trial
court awarded royalties based on an improper calculation of oil and gas
production.  Specifically, Gary argues that in calculating royalties accrued to
the appellees, the trial court erred by including production from all
Gary-operated wells in the field, rather than just the Furl White No. 1 well. 
To this end, Gary challenges the legal sufficiency of the evidence supporting
the trial court=s findings that (1) Gary produced oil and
gas from the Luke Bryan Survey, (2) Gary sold the oil and gas produced from the
Luke Bryan Survey, (3) Gary, as operator of the wells, distributed the proceeds
to the owners of royalty in the survey, and (4) Gary held the royalty payments
that were due to Modesto White, Jr., and Richard N. Evans in suspense.








When reviewing the legal sufficiency of the evidence, we
review the evidence in the light most favorable to the challenged finding and
indulge every reasonable inference supporting it.  City of Keller v. Wilson,
168 S.W.3d 802, 822 (Tex. 2005).  We credit favorable evidence if a reasonable
fact‑finder could, and disregard contrary evidence unless a reasonable
fact‑finder could not.  Id. at 827.  There is Ano evidence@ or legally
insufficient evidence when (a) there is a complete absence of evidence of a
vital fact; (b) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (c) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (d) the
evidence conclusively establishes the opposite of the vital fact.  Id.
at 810.  We look to see whether any record evidence supports the challenged
finding.  Bellino v. Comm=n for Lawyer
Discipline, 124 S.W.3d 380, 385 (Tex. App.CDallas 2003, pet.
denied).  Anything more than a scintilla of evidence is legally sufficient to
support the trial court=s finding.  Id.        

Of the appellees= various
pleadings, only the sixth and seventh amended petitions concern claims against
Gary.  And in each of those petitions the appellees do not limit their claims
for unpaid royalties to production only from Furl White No. 1.  Instead, they
seek royalties owed to them from Aproduction of any
of the wells on the South 203.73 acres of the Luke Bryan Survey[.]@  At trial, Gary
testified that he operated several wells in the Luke Bryan Survey.  Gary=s testimony,
coupled with the documentary evidence presented at trial, demonstrates that oil
and gas was produced from these wells.  Gary testified that he marketed the
production from these wells, paid the bills, and Adisbursed the
royalty.@  

Gary admitted, however, that, in dispersing the royalty, he
never paid royalties to the appellees, but instead deposited royalties accruing
to White=s interest into a
suspense account.  Gary not only admitted that he had not paid the appellees,
he also failed to show at trial that he owed them royalties only on production
from Furl White No. 1.  As this unrebutted testimony qualifies as more than a
mere scintilla, we hold that the evidence is legally sufficient to support the
trial court=s findings of fact.  See Bellino, 124 S.W.3d at
385.  Because these findings are legally sufficient, and because the appellees= pleadings did not
limit their claims to the Furl White No.1 well, the trial court did not err in
calculating accrued royalties based on production from all wells operated by
Gary on the lease.  We overrule Gary=s second issue.

F.       Attorney=s Fees








Headington=s second issue, and Gary=s third issue, is
that the trial court erred in awarding attorney=s fees to the
appellees.  Headington and Gary each contend that the appellees cannot be
considered Aprevailing parties@ because (1) they
abandoned their original royalty-interest claim and instead adopted the
fractional interest as Headington=s expert
calculated it, and (2) they are not entitled to recover either expert-witness
fees or prejudgment interest under section 91.403.  In response, the appellees
state that trial court=s judgment entitles them to attorney=s fees under the
specific language of Chapter 91 of the Natural Resources Code.

The availability of attorney=s fees under a
particular statute is a question of law.  Holland v. Wal‑Mart Stores,
Inc., 1 S.W.3d 91, 94 (Tex. 1999).  Therefore, we review this issue de
novo.  Barber v. Colorado I.S.D., 901 S.W.2d 447, 450 (Tex. 1995).  We
construe statutory provisions to ascertain and effectuate legislative intent,
and we ascertain that intent by first looking to the plain and common meaning
of the statute=s words.  Tex. Mut. Ins. Co. v. Sonic Sys. Int=l, Inc., 214 S.W.3d 469,
476 (Tex. App.CHouston [14th Dist.] 2006, pet. denied).  We must also
view a statute=s terms in context and give them full effect.  Id.

Both appellants argue that because the appellees are not Aprevailing
parties,@ they cannot
recover attorney=s fees.  The trial court awarded attorney=s fees under
section 91.406 of the Natural Resources Code.  This section provides that, in a
suit to collect proceeds and interest from the sale of oil and gas, the court
shall include in any final judgment in favor of the plaintiff an award
of reasonable attorney=s fees.  Tex. Nat. Res. Code Ann. _ 91.406 (Vernon
2001) (emphasis added).  Under this statute, the proper standard to be applied
is Aany final judgment
in favor of the plaintiff,@ not the Aprevailing party@ standard applied
elsewhere.  See, e.g., Green Int=l., Inc. v. Solis, 951 S.W.2d 384,
390 (Tex. 1997).  Applying the plain meaning of the word Afavorable,@ we consider any
judgment Afavorable@ to the plaintiff
when he obtains a measure of relief which leaves him in a better position than
he held before filing suit.  








In this case, the appellees sued for, and the trial court
awarded, unpaid royalties.  Because Headington does not appeal the award of
unpaid royalties, the judgment is Afavorable@ to the
appellees.  Likewise, because we have affirmed the trial court=s judgment against
Gary for unpaid royalties not barred by limitations, the appellees have
obtained a Afavorable@ result from him,
too.  Accordingly, the trial court correctly determined that the appellees are
entitled to some award of attorney=s fees from both
Headington and Gary.

Although the appellees are certainly entitled to an award
of fees, the amount remains an issue.  Section 91.406 provides for Aan award of
reasonable attorney=s fees.@  Tex. Nat. Res.
Code Ann. _ 91.406.  Generally, the reasonableness of attorney=s fees is a
question of fact to be determined by the fact‑finder and the award, if
any, must be supported by competent evidence.  Dilston House Condo. Ass=n v. White, 230 S.W.3d 714,
716 (Tex. App.CHouston [14th Dist.] 2007,  no pet.) (citing
Bocquet v. Herring, 972 S.W.2d 19, 21 (Tex. 1998)).  

Factors that a fact-finder should consider when determining
the reasonableness of a fee include the time and labor required, the novelty
and difficulty of the questions involved, and the skill required to perform the
legal service properly; the likelihood  that the acceptance of the particular
employment will preclude other employment by the lawyer; the fee customarily
charged in the locality for similar legal services; the amount involved and the
results obtained; the time limitations imposed by the client or by the
circumstances; the nature and length of the professional relationship with the
client; the experience, reputation, and ability of the lawyer or lawyers
performing the services; and whether the fee is fixed or contingent on results
obtained or uncertainty of collection before the legal services have been
rendered.  Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d
812, 818 (Tex. 1997); Lesikar v. Moon, 237 S.W.3d 361, 376 (Tex. App.CHouston [14th
Dist.] 2007, pet. denied). 








Presumably the trial court took these factors into
consideration when it determined how much to award in fees.  But the story of
one of these factorsCthe amount involved and the results
obtainedChas changed since
the trial court made its decision.  We have reversed the prejudgment-interest
awards, the award of expert-witness fees, and determined that limitations bars
some of the damages against Gary.  A substantial reduction in the amount of
damages a trial court awards warrants a reconsideration by the trial court of
the amount of attorney=s fees awarded.  See Barker v. Eckman,
213 S.W.3d 306, 314 (Tex. 2006).  Based on our reduction today of the appellees= aggregate
recovery, we believe that the trial court should reconsider the amount of fees
awarded.  Accordingly, we sustain Headington=s second issue,
and Gary=s third issue, and
remand to the trial court for a new determination of attorney=s fees.

Conclusion

Headington does not appeal the trial court=s award to the
appellees of royalties Headington placed in the registry of the court. 
Therefore, that portion of the judgment is undistrubed. However, we hold that
the trial court erred in awarding prejudgment interest and expert-witness fees
to the appellees.  We therefore reverse those awards and render judgment that
the appellees are not entitled to prejudgment interest or expert-witness fees. 
We also reverse the trial court=s order that the appellees recover from
Gary the proceeds from the sale of oil and gas, and remand to the trial court
to recalculate such proceeds accruing between March 4 and October 1, 2000. 
Finally, we reverse the award of attorney=s fees against
both Headington and Gary.  We remand the case to the trial court to recalculate
accrued proceeds and attorney=s fees consistent with this opinion.

 

 

 

 

/s/      Jeffrey V. Brown

Justice

 

 

 

 

Panel consists of
Chief Justice Hedges, and Justices Brown and Boyce.









[1]  Gielda White died before trial.





[2]  AParties and
their attorneys are expected to cooperate in discovery and to make any
agreements reasonably necessary for the efficient disposition of the case. All
discovery motions or requests for hearings relating to discovery must contain a
certificate by the party filing the motion or request that a reasonable effort
has been made to resolve the dispute without the necessity of court
intervention and the effort failed.@ 
Tex.  R.  Civ.  P.  191.2.